**UNITED STATES of America,**
**Appellee,**

v.

**Leslie Gene UNTIEDT, Appellant.**

**No. 73-1742.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1974.

Decided March 21, 1974.

Rehearing and Rehearing En Banc
Denied May 9, 1974.

*Fleischmann* at 721, n. 17 are not applicable in this case.

Robert C. Gross, Dumbaugh, Gutz, Booth & Gross, Cedar Rapids, Iowa, for appellant.

Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before GIBSON, STEPHENSON, and WEBSTER, Circuit Judges.

GIBSON, Circuit Judge.

On September 27, 1973, a jury found defendant guilty in a single count of violating 18 U.S.C. §§ 2 and 659.[1] The District Court[2] sentenced defendant to five years imprisonment.

Defendant argues three contentions on this appeal: (a) there was insufficient evidence to support the jury's guilty verdict on receiving and possessing the stolen goods, (b) the District Court erred in prohibiting cross-examination of certain Government witnesses who might have revealed the name of the driver of the stolen truck, who allegedly was a Government informer, and (c) defendant's conviction as an aider and abettor was legally deficient since the Government knew the principal, but did not prosecute him. Rejecting each argu-

1. Defendant was initially charged in a two-count indictment with two others. Count I was an alleged violation of 18 U.S.C. § 371, and Count II was the violation herein under 18 U.S.C. §§ 2 and 659. On July 17, 1972, defendant pled guilty to Count II, and Count I was dismissed. However, on October 20, 1972, Count I was dismissed for reasons not connected with the dismissal of that same count on July 17th. Thereafter, defendant sought to change his guilty plea, which this court, in reversing the District Court, allowed. Defendant pled not guilty to a one-count indictment, the violation of 18 U.S.C. §§ 2 and 659. The trial and guilty verdict followed, and defendant now timely appeals.

2. The Honorable Edward J. McManus, Chief Judge, United States District Court, Northern District of Iowa.

ment, we affirm the judgment of conviction.

On April 21, 1972, the FBI and Cedar Rapids Police Department learned that Charles Frederick Joss was organizing a theft of a semi-trailer load of meat from the LCL Transit Company terminal, an interstate truck terminal located in Cedar Rapids, Iowa. On April 22, 1972, Joss and Jack Alan McCausland, who had been organizing this scheme for at least eight days prior to April 22nd, asked defendant to help them in hijacking a truck and unloading the meat. Defendant agreed to assist in the scheme, according to defendant, only by unloading the meat. Defendant knew that he would be paid for his efforts.

During the evening of April 22, 1972, Joss and McCausland met at the home of defendant's girl friend. Also that same evening, the FBI had been keeping the LCL Transit Company terminal under surveillance and witnessed the theft of a semi-trailer loaded with meat, which was valued at over $12,000 and was in transit from Iowa to Wisconsin. FBI agents followed the stolen trailer to Cedar Acres Custom Processing Plant, while other FBI agents had earlier observed defendant and two others drive into the same parking lot. Defendant knew that a trailer load of stolen meat would arrive at that location and that he was expected to assist in unloading the stolen meat. When the trailer arrived at the plant's parking lot, defendant was arrested as he stood at the rear door of the parked truck. The unloading had not yet begun.

First, defendant argues that the evidence was legally insufficient to demonstrate that defendant had possession under 18 U.S.C. § 659 of the stolen meat at the time of his arrest. Defendant contends that he cannot be said to have had constructive possession of the stolen meat, since he allegedly did not intend to steal the meat and since he had no capability to control and exercise dominion over the stolen property.

Of course, on appeal we take the view of the evidence that is most favorable to support the jury's verdict and accept as established all reasonable inferences that tend to uphold the jury's verdict. United States v. Gaskill, 491 F.2d 981 (8th Cir., filed February 14, 1974); Cross v. United States, 392 F.2d 360, 361 (8th Cir. 1968). Although defendant argues that the verdict is invalid due to insufficiency of the evidence to support a finding of possession of the stolen meat by defendant, it is unnecessary to decide that issue in order to support the jury's verdict of guilty. Defendant was charged in Count II as an aider and abettor under 18 U.S.C. § 2 for the offense under 18 U.S.C. § 659. In Johnson v. United States, 195 F.2d 673, 675 (8th Cir. 1952), this court stated:

Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term "aiding and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient.

In this case, defendant admits that he met with Joss and McCausland, the principals, and agreed to unload the stolen meat from the tractor-trailer for pay. Defendant was present at the Cedar Acres plant and directed the parking of the tractor-trailer. He was ready to help unload the stolen meat. Under these facts, defendant shared the criminal intent of the principals both at the planning and commission stages of the crime. Defendant clearly was an aider and abettor of receiving and possessing goods stolen from an interstate shipment and stood ready as an active participant to direct and assist in unloading the sto-

len goods and utilize them for unlawful purposes.[3] He was no mere innocent bystander.

Second, defendant argues that he should have been allowed to cross-examine certain Government witnesses to attempt to learn the name of the person who was the driver of the stolen truck. Defendant contends that this truck driver, who was not arrested by officers at the scene of the crime, was a confidential informant for the Government and that this confidential informant helped to entrap defendant in some unexpressed manner. Finally, defendant states that the driver's name and his testimony could have established that the driver "lured" defendant into the entire scheme, and therefore cross-examination of the Government's witnesses to learn the identity of the driver was essential to defendant's presentation of a defense of entrapment.

Our first comment is that this argument taxes our credulity. Defendant is contending that he does not know the identity of the truck driver who supposedly lured him into a major theft, who agreed with defendant to pay him for unloading the stolen meat, and who also allegedly was a confidential informant for the Government. Assuming that the truck driver was the informant and assuming that this person entrapped defendant into committing this theft, it seems more than strange to us that defendant would not himself have known this truck driver. If defendant was lured into this scheme and if he was to be paid by this "informant," certainly defendant had some means of identifying him. The more reasonable conclusion is that the truck driver did not lure defendant into this theft and his identity was not essential to a defense of entrapment. In fact, the record reveals that defendant did know the identity of the truck driver and that defendant had refused to testify against the driver if brought to trial.

3. The indictment in this case charged defendant in one count with aiding and abetting in stealing, receiving, possessing, and concealing goods stolen from an interstate shipment. The District Court charged the jury in three instructions concerning the nature of the charge. In Instruction Number 5 the District Court stated that the defendant was charged with "receiving and possessing property stolen from an interstate shipment in violation of 18 U.S.C. Section 659." In this instruction, stealing was not mentioned. Instruction Number 6 defined the crime of receiving and possessing stolen goods from interstate shipment. In Instruction Number 8, the court instructed according to the words of the statute, including stealing goods moving in interstate shipment and receiving, possessing, and concealing goods stolen from interstate shipment. The court also instructed on the definitions of possession, but did not explain the meaning of the word "stealing." Defendant did not object to the instructions, except for proffering an instruction relating to entrapment. On appeal, defendant has not argued that the evidence was insufficient to support a conviction of stealing goods from interstate shipment. He has only argued that there was allegedly insufficient evidence to support a conviction of receiving and possessing the stolen goods. We think it is clear from the instructions taken as a whole that the case was submitted to the jury only on the charge of receiving and possessing goods stolen from interstate shipment and not on the separate offense of stealing goods in interstate shipment.

It is clear that the duplicitous indictment should not have charged the defendant with two separate offenses under § 659 in one count; however, defendant did not object to the indictment with a pretrial motion and this failure to object constitutes a waiver. Fed.R.Crim.P. 12(b); Flying Eagle Publications, Inc. v. United States, 273 F.2d 799, 803 (1st Cir. 1960); Wm. Barron, 4 Federal Practice and Procedure § 8.04 [1] at 8–12 (1973). The proper procedure for defendant to have followed concerning duplicity of this indictment would have been to move for the Government to elect on which charge or charges it desired to proceed. Barron, supra § 8.04 at 8–12. The failure of defendant to make such a pretrial motion precludes a review of the duplicitous indictment. Defendant also has not argued that the jury's verdict was insufficient on the charge of stealing goods moving in interstate shipment, and, therefore, we do not review the jury's verdict to determine the resolution of that question. We, therefore, are left with reviewing defendant's argument that there was insufficient evidence to support the jury's conviction on receiving and possessing goods stolen from interstate shipment.

In this case, the District Court conducted an in camera hearing to determine if the defendant's claim concerning entrapment had a basis in fact. The District Court instructed defense counsel that the "name of the informant should not be disclosed to the defendant" and restricted defendant's cross-examination of a Government witness to learn that name. The District Court concluded from the in camera hearing that the identity of the informant and any possible testimony by him "would not contribute to the guilt or innocence of the defendant in any way."

In United States v. Barnes, 486 F.2d 776, 778 (8th Cir. 1973), we held that "the government's disclosure of [an informant's] name and whereabouts must necessarily turn on the facts and circumstances involved." In Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), the Court stated:

> We believe that no fixed rule with respect to disclosure [of a Government informer's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

The defendant's own testimony shows the insignificance of any possibly favorable testimony that could have been elicited from the Government informer. We think that defendant's own admissions indicate that he knew the name of the truck driver himself and that he was approached by Joss to participate in the theft. Joss had been planning the theft some time before the FBI learned of the scheme. It, therefore, is apparent to us, as it was to the District Court, that revealing the informant's name and producing the informant would not have been helpful to the accused's defense. *See*, Roviaro v. United States, *supra*, at 60–61, 77 S.Ct. 623, *quoted* in United States v. Barnes, *supra* at 778. Joss, not the Government informer, induced the defendant to enter the scheme.

■ Last defendant argues that he cannot be found guilty as an aider and abettor of the charged offenses when the Government does not prosecute the principal. Evidently defendant is arguing that no crime was committed, since the principal purportedly was a Government informant who lured defendant into the scheme. However, this court has held that the principal need not be identified or convicted in order to sustain a conviction of an aider and abettor. Pigman v. United States, 407 F.2d 237, 239 (8th Cir. 1969). We have held that in order to sustain a conviction of an aider and abettor, evidence must be presented to demonstrate that an offense was committed by a principal and that the principal was aided and abetted by the defendant. Pigman v. United States, *supra* at 239. Sufficient evidence was presented to show that Joss and McCausland were principals and that defendant knowingly and willfully participated in the criminal offense. The evidence was sufficient for the jury to find the defendant guilty under the court's instruction as an aider and abettor in violating 18 U.S.C. § 659 in receiving and possessing goods stolen from an interstate shipment.

Judgment of conviction affirmed.