**UNITED STATES of America, Plaintiff,**

v.

**Leonard CROW DOG, Defendant.**

**UNITED STATES of America, Plaintiff.**

v.

**Stanley Richard HOLDER, Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**Carter CAMP, Defendant.**

**Nos. CR 75–18 to CR 75–20.**

United States District Court,
N. D. Iowa,
Cedar Rapids Division.
Aug. 4, 1975.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., R. D. Hurd and David R. Gienapp, Asst. U. S. Attys., for plaintiff.

Kenneth E. Tilsen, St. Paul, Minn., for Leonard Crow Dog.

Joseph Beeler, Coconut Grove, Miami, Fla., for Carter Camp.

Frances Schreiberg, Berkeley, Cal., Wounded Knee Legal Defense/Offense Committee, Council Bluffs, Iowa, for Stanley Holder.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on defendants' two resisted motions to dismiss, one for denial of the right to speedy prosecution and trial, and the other for discriminatory prosecution and government misconduct, both filed April 16, 1975. Also before the court are defendants' resisted post-trial motion in the alternative for judgment of acquittal or new trial filed June 27, 1975, and their resisted motion for post-trial relief filed July 25, 1975.[1]

Defendants in each of these actions have been charged with committing criminal acts during the "Wounded Knee Takeover," an incident occurring on the Pine Ridge Indian Reservation, South Dakota, between February 27 and May 8, 1973. The procedural history of these cases has been summarized by this court in its prior ruling of May 2, 1975, granting a change of venue, and that discussion is incorporated by reference herein.

Counts I and II [2] in each of the three indictments were consolidated for trial pursuant to Rule 13, FRCrP, by order of May 12, 1975. Following a jury trial, a verdict of guilty on both counts was returned against all three defendants. Separate third counts against defendant Crow Dog in No. CR 75–18 and against defendant Camp in No. CR 75–20 were dismissed upon motion by the government subsequent to the jury's verdict.

Oral testimony and documentary evidence, including numerous *in camera* exhibits, were presented at a three-day hearing on defendants' pre-trial motions. Affidavits ordered by the court to be submitted by the government have also been filed in connection with these motions.[3] All motions are ripe for decision and are considered sequentially below.

1. The motion for post-trial relief filed July 25, 1975, asks the court to amend and supplement the previously filed motion for new trial and to supplement the record on government misconduct. These two forms of relief are granted, and the court has considered the matters raised by the motion and supporting documents in ruling on the motions for new trial and to dismiss for government misconduct. A third request, for an evidentiary hearing on the issues raised by the recent motion, is denied.

2. Counts I and II in each indictment allege identical substantive offenses. Count I contains the charge of wilfully impeding a postal inspector while in the performance of his duties, in violation of 18 U.S.C. §§ 111 and 1114 (1970). Count II charges defendants with robbing another of personal property belonging to the United States, in violation of 18 U.S.C. § 2112 (1970).

3. In reaching its decision on the motion to dismiss for discriminatory prosecution and government misconduct, the court has reviewed and considered the briefs, affidavits, transcripts, and all other documents and testimony presented in support thereof, including the following:

 (a) those portions of the transcript in the trial of *United States v. Banks & Means* before the Honorable Fred Nichol in St. Paul cited by the defendants;

 (b) the briefs and documents filed, together with the transcript of testimony adduced, at hearings on defendants' motions to dismiss for discriminatory prosecution and government misconduct in the *Banks & Means* case;

 (c) appellant's and appellee's briefs submitted to the Eighth Circuit on the appeal of the decision in *United States v. Banks & Means*, 383 F.Supp. 389 (D.S.D.1974), as well as the decision of the appellate court, 513 F.2d 1329 (1975);

 (d) affidavits filed in this case by both parties in support of their respective motions and resistances thereto, and in particular the affidavits filed by the government in response to the directives of the court;

 (e) the record in the instant case, including trial conduct and testimony;

 (f) the motion for post-trial relief filed July 25, 1975, together with supporting documents;

 (g) the memorandum opinion of the Honorable Andrew Bogue dated March 22, 1975, in the case of *United States v. Escamilla*, CR 73–5138 (D.S.D.);

 (h) the memorandum opinion of the Honorable Warren Urbom dated June 19, 1975, in the cases of *United States v. Cooper, United States v. Fleury, et al.*, and *United States v. Alvarado*, (D.Neb.), 397 F.Supp. 277.

*Motion to Dismiss for Discriminatory Prosecution*

Defendants move this court to dismiss the indictments against them on the grounds that prosecution of these charges has been instituted and continued in bad faith and on a constitutionally impermissible basis, and that the government has committed gross misconduct during the course of said prosecution. The motion relies upon defendants' rights under the Fifth, Sixth, and Ninth Amendments to the United States Constitution, the Federal Rules of Criminal Procedure, and the inherent discretionary powers of the district courts.

■ Discriminatory enforcement and application of a valid statute by state officials constitutes a denial of equal protection under the Fourteenth Amendment. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). While *Yick Wo* specifically involved unequal administration of a public ordinance by a city licensing board, the underlying principle has been held applicable to the actions of prosecutors and police officials. *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 588, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *United States v. Falk,* 479 F.2d 616, 618 (7th Cir. 1973); *Shock v. Tester,* 405 F.2d 852, 855–56 (8th Cir. 1969).

The Fourteenth Amendment's prohibition against a state taking action which would "deny to any person within its jurisdiction the equal protection of the laws" restricts conduct of the federal government as well through the Fifth Amendment. *Bolling v. Sharpe,* 347 U. S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Mow Sun Wong v. Hampton,* 500 F.2d 1031, 1037–38 (9th Cir. 1974); *Washington v. United States,* 130 U.S.App.D. C. 374, 401 F.2d 915, 922 (1968).

Mere conscious exercise of some selectivity in prosecution is not a constitutional violation. *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). The defense of discriminatory enforcement requires a showing of intentional and purposeful selection based on an unjustifiable standard such as race or religion. *Tollett v. Laman,* 497 F.2d 1231, 1233 (8th Cir. 1974); *United States v. Steele,* 461 F.2d 1148, 1151 (9th Cir. 1972). See *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). The exercise of protected First Amendment activities is included among those bases upon which discrimination is constitutionally impermissible. *Falk, supra* at 620; *Steele, supra* at 1151; *United States v. Crowthers,* 456 F.2d 1074, 1080 (4th Cir. 1972).

Defendants contend that the instant prosecutions are part of an effort by the government to selectively enforce the laws against those Indians who are members or sympathizers of the American Indian Movement (AIM). They further argue that the misconduct of the government associated with these prosecutions evinces bad faith on the part of the government, that is, a motive to harass and intimidate rather than an honest attempt to bring criminals to justice. The bad faith, it is urged, indicates that the selectiveness in prosecution was purposeful and intentional, with the goal of suppressing the First Amendment rights of Indians to associate freely with AIM and to adopt the views espoused by that organization.

■ Freedom of association is protected by the First Amendment, *e. g., Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed. 24 (1968), and criminal prosecutions selectively instituted purposefully to quash the exercise of that freedom would constitute a denial of equal protection. See *Steele, supra* at 1151; *Crowthers, supra* at 1080. But the court is unable to conclude that the criminal cases pending here against the defendants were brought purposefully and intentionally on the basis that the defendants were affiliated with AIM.

■ Defendants have presented three lines of evidence to support their theory of discriminatory prosecution. First, defendants cite statistical records main-

tained and published by the Justice Department which indicate an extremely low conviction rate in criminal cases arising from Wounded Knee in comparison with the average conviction rate for all criminal cases instituted by the Justice Department. There was testimony that the factual basis for many of the criminal charges brought against participants in Wounded Knee was weaker than in most criminal cases pursued by the Justice Department.

But these bald statistical correlations do not imply that their causation was a desire to discriminatorily prosecute AIM supporters. They do indicate a low conviction rate for the government, but the reason for this could be logistical difficulties in prosecuting criminal charges arising from a massive civil disorder, or a host of other factors. These figures do not compel an inference that the government has been using the criminal process to selectively harass and intimidate members of AIM.

■ Defendants allege and have presented testimony by individual AIM members to the effect that non-AIM members have not been prosecuted for violent criminal conduct, often directed at AIM sympathizers, whereas charges have been brought against AIM mem-'Jers for similar or less severe criminal acts. Approximately twenty specific instances of such forceful crimes as murder and shooting through an AIM member's house were related to the court, with allegations that no meaningful investigation into these incidents was conducted by the Federal Bureau of Investigation (FBI), and that no arrests were made or indictments sought even when incriminating evidence was present.

Upon the presentation of this testimony, the court directed the FBI to deliver its investigatory files regarding each of these occurrences to the court for an *in camera* examination. The files having been produced and thoroughly reviewed by the court, it is the opinion of this court that the allegations of the defendants are unfounded. The files do not reveal a lack of investigatory effort on the part of the FBI towards non-AIM members, nor do they indicate a failure to prosecute once meaningful evidence had been discovered.

The frequency of violence on the Pine Ridge Indian Reservation, during the Wounded Knee affair and subsequent to it, is deplorable. But the evidence simply does not show that the efforts of the government to limit criminal conduct and to bring the perpetrators of it to justice have been discriminatorily directed at the AIM faction.

■ Finally, defendants call attention to an incident which occurred at an unauthorized roadblock being maintained by one Richard Wilson and other supporters of the tribal council. Testimony adduced at the hearing on this motion as well as evidence produced in *United States v. Banks & Means,* consolidated Nos. CR 73–5034, CR 73–5035, CR 73–5062, and CR 73–5063 (D.S.D.1974), established that an automobile was forcibly stopped at this roadblock and a rifle pointed at one of the occupants of the car, Kent Frizzel, Solicitor General of the Department of the Interior. Defendants argue that the failure to prosecute any of those present at the roadblock for this assault, or for maintaining the roadblock as an interference with the passage of vehicles containing food and medical supplies, the passage of such vehicles having been directed by court order of the Honorable Andrew Bogue, indicates a policy of selective nonenforcement against Wilson and his followers.

This court is inclined to agree with the opinion of Judge Nichol in *United States v. Banks,* 368 F.Supp. 1245 (D.S. D.1973), when presented with the argument of selective prosecution based on the government's inaction towards this roadblock or its instigators. The fact that indictments have not been brought against any of those involved in this incident, considered in the context of a disorder where literally hundreds of infractions were being committed, does

not by itself raise a serious doubt as to the motives of the prosecutor. 368 F. Supp. at 1252.

Three cases cited with strong reliance by the defendants are inapposite here. In *United States v. Falk, supra,* the appellate court vacated a conviction on a charge of failure to possess a draft card and remanded to the trial court with directions to hold a hearing on the issue of discriminatory prosecution. The court held that the published government policy of not prosecuting violators of the card possession regulations together with other factors established a *prima facie* case of improper discrimination in enforcing the law, which it was the government's burden to rebut at the hearing. 479 F.2d at 623.

Though a hearing was held in this case, it was not premised on the ground that defendants had already shown by their filings a *prima facie* case of selective prosecution, but rather the hearing was intended to develop the facts. The facts brought forth through the testimony and documentary evidence do not establish a reasonable doubt concerning the prosecutors' motives in the instant cases, especially compared to the strong inference of discriminatory purpose made out in *Falk*.

Similarly, the factual patterns in these cases do not rise to the level of discriminatory law enforcement brought forth in *Duncan v. Perez,* 445 F.2d 557 (5th Cir. 1971) and *Medrano v. Allee,* 347 F.Supp. 605 (S.D.Tex.1972). These cases involved civil rights actions to enjoin state prosecutions. Assuming that the factors delimited by the courts in those cases would also warrant dismissal of federal criminal indictments, the court is of the opinion that the facts shown here do not show the clear racially discriminatory prosecution in *Duncan* or the bad faith harassment through various law enforcement techniques to destroy the freedom of association in *Medrano*. *See United States v. Banks, supra,* 368 F.Supp. at 1252–53.

In summary, the court concludes that defendants' three categories of evidence, neither individually nor cumulated, show an intentional selection of these defendants for prosecution based on their affiliation with and activities in the American Indian Movement.

■ Defendants' motion raises a second theory for dismissal, a concept of such widespread government misconduct in the course of a criminal proceeding as to render the proceeding unconscionable under the due process clause because of irretrievable prejudice to a defendant's right to a fair trial. *United States v. Banks,* 374 F.Supp. 321, 333 (D.S.D. 1974). Government misconduct which has not incurably prejudiced the possibility of a fair trial so as to result in a denial of due process may nonetheless be grounds for dismissal under the court's inherent supervisory powers over the administration of criminal justice. *United States v. Banks,* 383 F.Supp. 389, 392–393 (D.S.D.1974), *appeal dismissed,* 513 F.2d 1329 (8th Cir. 1975). *See McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819 (1942); *Smith v. Katzenbach,* 122 U.S.App.D.C. 113, 351 F.2d 810, 816 (1965).

■ Twelve particular instances of misconduct are alleged by defendants, supplemented by a general allegation of other unenumerated occurrences of government misconduct. The majority of these allegations concern activities which took place during the trial of Banks and Means or other Wounded Knee defendants.

Unless these particular deeds are viewed as so grossly prejudicial that they taint all prosecutions arising from Wounded Knee, or at least all of the "leadership cases," a position which this court does not accept, then these actions are not relevant to dismissal of the present cases unless repeated here. The court has not found the type of conduct alleged, such as failure to comply with court orders or presentation of perjured testimony, to have reoccurred here.

Insofar as the prosecutorial conduct in *Banks & Means* was prejudicial to the rights of the defendants in that case, they received a remedy through the dismissal of all charges against them. *Banks, supra,* 383 F.Supp. at 397. The strained construction placed by the government upon an order of court issued by Judge Nichol directing disclosure of information pertaining to FBI informants, including "evidence arguably relevant to invasion of or contact with the defense attorney's camp," is a possible contempt matter to be dealt with by Judge Nichol in that fashion should he so desire.

 With respect to the issue of government informants' involvement in the instant cases, the court is of the opinion that neither considered separately as a denial of the Sixth Amendment right to the assistance of counsel, nor as one element in a cumulative series of acts of misconduct, should a dismissal be ordered here.

Pursuant to this court's order, the FBI informant files of John Schafer and Douglas Durham, whose disclosure in March of this year of a close association with Dennis Banks during the latter's criminal trial in St. Paul precipitated the dispute regarding compliance with Judge Nichol's order referred to above, were filed as *in camera* exhibits in this action. The court further ordered the government attorneys to review all informant files related to Wounded Knee and prosecutions arising therefrom, and to file with the court an affidavit stating *inter alia* that no information secured by any informants concerning defense strategy pertaining to any charges brought against these defendants was passed on to the investigative agency or prosecuting attorneys.

The court has meticulously examined the FBI files covering the activities and reports of Durham and Schafer and has found no evidence therein that either of these informants acted as an agent provocateur during the Wounded Knee takeover. These records likewise indicate that no defense strategy related to charges against the instant defendants and obtained through proximity to defense attorneys was passed on by these two informants to the FBI or the government prosecutors.

The government has submitted the affidavits directed by the court. Based on the court's *in camera* examination and the attestations contained in the affidavits signed by the government attorneys, the court is satisfied that any information concerning charges pending against these defendants, even if overheard by an informant from conversations of a defense attorney intended to be confidential, was not communicated to the FBI or government attorneys.

Mere presence of an informant during strategy sessions of defense attorneys is not *per se* violative of the right to freely communicate with counsel guaranteed by the Sixth Amendment. *Hoffa v. United States,* 385 U.S. 293, 306–308, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *United States v. Rosner,* 485 F.2d 1213, 1224 (2nd Cir. 1973). *See United States v. Zarzour,* 432 F.2d 1, 3–4 (5th Cir. 1970). Since defense strategy was not passed on to the FBI or prosecuting attorneys, and absent the gross intrusion into the attorney-client relationship present in *Coplon v. United States,* 89 U.S.App.D.C. 103, 191 F.2d 749 (1951) or *Caldwell v. United States,* 92 U.S.App.D.C. 355, 205 F.2d 879 (1953), the court concludes that no Sixth Amendment violation occurred here. *Hoffa, supra,* 385 U.S. at 306–307, 87 S.Ct. 408.

 Another item of misconduct specified in defendants' motion is massive prejudicial pre-trial publicity caused by the government. This argument is not well taken. The court is not aware of nor has any evidence been produced showing massive prejudicial publicity in the Northern District of Iowa area prior to trial. Venue in these cases was transferred to this district upon defendants' motion for change of venue in order to avoid the effects of deep-seated prejudices or previous adverse media

coverage which were arguably present in the District of South Dakota. National news broadcasts of the Wounded Knee affair some two years ago are not likely to have infused the populace in this district with such prejudice that they would be unable to render a verdict based on the evidence presented in court. *See Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1961).

The remaining items of alleged misconduct enumerated in defendants' motion are either of limited relevancy to the present cases as discussed above, or are clearly without merit from the record and require no further comment. It is the view of the court that the government has not engaged in misconduct related to these cases which would irreparably prejudice defendants' rights to a fair trial, and dismissal is not warranted either under the Fifth Amendment or the court's supervisory powers.

### Motion to Dismiss for Denial of Speedy Trial

The substance of defendants' motions relating to speedy prosecution is that the failure to try them together with Russell Means and Dennis Banks in January of 1974 has violated their rights under the Fifth and Sixth Amendments to the United States Constitution and FRCrP 48, and that these charges should accordingly be dismissed.

### Sixth Amendment

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) the Supreme Court delineated the criteria by which claims of deprivation of a speedy trial are to be judged. This case establishes a balancing test, in which the conduct of both the prosecution and defendant are weighed, and identifies four factors which are of prime importance: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. None of these factors are

dispositive in and of themselves but rather are related factors and must be considered together with such other circumstances as may be relevant to the particular case. *See, e. g., United States v. Baumgarten,* 517 F.2d 1020 (8th Cir. 1975); *United States v. Geller,* 481 F.2d 275 (9th Cir. 1973); *United States v. Lasker,* 481 F.2d 229, 237 (2nd Cir. 1973); *United States v. Phillips,* 482 F. 2d 191 (8th Cir. 1973); *United States v. Toy,* 157 U.S.App.D.C. 152, 482 F.2d 741 (1973). It has been observed, however, that when dealing with the Sixth Amendment, delay would almost always be considered harmless error unless there has been a showing of prejudice. *United States v. Clay,* 481 F.2d 133 (7th Cir. 1973).

Turning to an examination of the factors as they relate to these cases, it is the court's view that the delay must be measured from the date of the original indictments, or approximately 25 months. In *United States v. Marion,* 404 U.S. 307 at 321, 92 S.Ct. 455 at 463, 30 L.Ed.2d 468 (1971) the court made clear that the protections of the Sixth Amendment were triggered by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." Here defendants have been continuously under restraints as a result of charges which arise out of the same incident. While the second indictment is much narrower than the original, the charges are of such a nature that they must be considered together for speedy trial purposes.

This delay then must serve as a "triggering mechanism" prompting consideration of the other balancing factors. *Barker v. Wingo, supra,* 407 U.S. 530–31, 92 S.Ct. 2182. Here, however, a consideration of the other factors leads this court to the conclusion that defendants were not deprived of the right to a speedy trial.

Initially, the court would observe that the initial case was quite complex, which, under *Barker,* would

justify some sort of delay. Indeed, in this case defendants appear to have raised no objection to the period from indictment until January of 1974 and desired the time for preparation of their own case and the urging of pre-trial motions. Likewise, the delay from January until the termination of the Means-Banks trial was largely the result of defendants' unwillingness to participate in simultaneous trials.

Of more importance in consideration of this motion is the nature of defendants' demand and absence of clear request for a prompt trial. As the Supreme Court said in *Barker v. Wingo*, at 536, 92 S.Ct. at 2195:

> "But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."

Here defendants' demand was not for a speedy trial but for a joint trial, and under the circumstances in these cases, it appears that this is precisely what they desired. The government was prepared to go ahead with simultaneous trial if that was defendants' desire, but they apparently did not.

Finally, defendants have made no showing of prejudice. For the most part defendants were free on bail, eliminating any substantial claim of prejudicial incarceration. Likewise, though given the opportunity, defendants have failed to show any impairment of their defense or anxiety or apprehension over the ultimate outcome of the case.

### FRCrP 48

■ FRCrP 48 is a codification of the inherent power of a court to dismiss a case for want of prosecution. 8A Moore's Federal Practice 48.03(1). It is not coextensive with the Sixth Amendment guarantee but rather implements that right. *See, e. g., United States v. Clay*, 481 F.2d 133, 135 (7th Cir. 1973);

*Hodges v. United States*, 408 F.2d 543 (8th Cir. 1969); *Cohen v. United States*, 366 F.2d 363 (9th Cir. 1966); *United States v. Mark II Electronics of Louisiana, Inc.*, 283 F.Supp. 280 (E.D. La.1968). Rule 48(b) gives the court discretion to dismiss an indictment where there has been unnecessary delay even though there has been no Sixth Amendment violation and under certain circumstances where no prejudice has been shown. *See, e. g., United States v. Clay, supra; United States v. McKee*, 332 F.Supp. 823 (D.Wyoming 1971); *United States v. Navarre*, 310 F.Supp. 521 (E.D.La.1969). While it appears that the rule imposes a more stringent standard upon the government than the Sixth Amendment, the precise limits and the standards for the exercise of this discretion are unclear. *See United States v. Dallago*, 311 F.Supp. 227 (E.D. N.Y.1970); *United States v. Mark II Electronics of Louisiana, Inc., supra*. The Eighth Circuit has indicated that the same factors which are relevant under the Sixth Amendment are likewise relevant under Rule 48(b). *Hodges v. United States, supra*.

Here, under the circumstances outlined above, the court is not inclined to dismiss the indictment on these grounds.

### Due Process

■ Defendants' final claim in this regard is that the delay in the return of the present indictment has violated defendants' rights under the Fifth Amendment to the United States Constitution.

In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), while recognizing that the statute of limitations provides the primary protection for delay in prosecution, the court did recognize that preindictment delay on the part of the government may violate defendant's rights under the Fifth Amendment. Since *Marion*, the Eighth Circuit has measured defendant's claims under the Fifth Amendment as involving a process of balancing the rea-

sonableness of the delay against any resultant prejudice to the defendant. *See e. g., United States v. Jackson,* 504 F.2d 337 (8th Cir. 1974); *United States v. Norton,* 504 F.2d 342 (8th Cir. 1974); *United States v. Washington,* 504 F.2d 346 (8th Cir. 1974).

In applying this test, the court in *Jackson* indicated that while in some circumstances prejudice might be inferred from unjustified delay, generally where the government is not engaging in intentional delay in order to gain a tactical advantage over the accused, the defendant must affirmatively demonstrate prejudices. *United States v. Jackson, supra,* at 339 n. 2.

Here, as above, defendants have made no showing to substantiate their claims of prejudice or intentional delay. These claims are at best conclusory. By most standards, the delay is not substantial and there is no indication that an earlier indictment would have resulted in an earlier trial. Further, in light of the circumstances of this case and the magnitude of the prosecutions, the delay does not appear to be unreasonable.

*Motion in the Alternative for Judgment of Acquittal or New Trial* [4]

Following a jury verdict of guilty on both counts for all three defendants, the latter have moved under Rule 29, FRCrP, for a judgment of acquittal as to each defendant on the ground that the evidence is insufficient to sustain a conviction.

The standard to be applied in passing upon a motion for judgment of acquittal is whether a reasonable mind might fairly conclude guilt beyond a reasonable doubt, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *Curley v. United States,* 81 U.S.App.D.C. 389, 160 F.2d 229, 232–233 (1947), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850. *See Conaway v. United States,* 349 F.2d 907 (8th Cir. 1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 554, 15 L. Ed.2d 467. The evidence and inferences drawn therefrom must be viewed in the light most favorable to the government. *United States v. Wolfenbarger,* 426 F.2d 992, 994 (6th Cir. 1970); *United States v. Fryer,* 419 F.2d 1346, 1349 (8th Cir. 1969); *Moore v. United States,* 375 F.2d 877, 879–880 (8th Cir. 1967).

The defendants here were found guilty on a theory of aiding and abetting the commission of the crimes charged in the indictment. Specifically, they were convicted in Count I of wilfully and unlawfully impeding postal inspector Graham while the latter was engaged in the performance of his official duties, in violation of 18 U.S.C. § 111,[5] and in Count II of unlawfully, wilfully, and forcefully taking from the person of inspector Hanson a pistol belonging to the United States, in violation of 18 U.S.C. § 2112.[6]

Federal statutory law provides that one who aids, abets, counsels, commands, induces or procures the commission of a crime is punishable as a principal. 18 U.S.C. § 2. The United States Supreme Court has described the requisites of aiding and abetting in *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S. Ct. 766, 769, 93 L.Ed. 919 (1949):

In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate

---

4. Request for oral argument on this motion is denied. Local Rule 16 (N.D.Ia.)

5. Section 111 of Title 18, United States Code, provides in part:
 Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties,
 shall be fined not more than $5,000 or imprisoned not more than three years, or both.

6. Section 2112 of Title 18, United States Code, provides:
 Whoever robs another of any kind or description of personal property belonging to the United States, shall be imprisoned not more than fifteen years.

himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." L. Hand, J., in *United States v. Peoni*, 2 Cir., 100 F.2d 401, 402.

 To find one guilty as an aider and abettor, it must be proven that he shared in the criminal intent of the principal and that there was a community of unlawful purpose at the time the act was committed. *United States v. Untiedt*, 493 F.2d 1056, 1058 (8th Cir. 1974); *Snyder v. United States*, 448 F. 2d 716, 718 (8th Cir. 1971); *Johnson v. United States*, 195 F.2d 673, 675–676 (8th Cir. 1952). The intent required has also been described as a "purposive attitude." *United States v. Hill*, 464 F. 2d 1287, 1289 (8th Cir. 1972); *United States v. Kelton*, 446 F.2d 669, 671 (8th Cir. 1971). Presence at the scene must be accompanied by a culpable purpose before it can be equated with aiding and abetting. *Hill, supra* at 1289; *Kelton, supra* at 671; *Snyder, supra* at 719.

The second essential element which must be shown is some active participation by the accused which furthers or encourages the crime. *United States v. Irons*, 475 F.2d 40, 42 (8th Cir. 1973); *United States v. Thomas*, 469 F.2d 145, 147 (8th Cir. 1972); *Johnson, supra* at 675. Mere presence even when coupled with negative acquiescence is not sufficient. *Thomas, supra* at 147; *Baker v. United States*, 395 F.2d 368, 371 (8th Cir. 1968); *Johnson, supra* at 675.

 The evidence in the instant case consisted of testimony of three of the four postal inspectors allegedly impeded on March 11, 1973, together with a limited number of photographs and other exhibits. Viewing the evidence in a manner most favorable to government, it is the view of the court that the guilty verdict on Count I was not improper in light of the evidence.

All three defendants were placed by testimony at the museum in Wounded Knee during the period in which the postal inspectors were being held there against their will. The crime of impeding and obstructing these postal inspectors was a continuing one, occurring over a period of a few hours. There was testimony that at various points during this time span all three defendants engaged in conduct which evidenced a "purposive attitude" towards the forceful interference with the postal inspectors.

Defendant Crow Dog proclaimed them prisoners of war, directed that they be searched, obtained briefcase keys from inspector Graham, and lectured them on the evils of the white man while they were bound. Defendants Camp and Holder acted as a guard and security officer, respectively, and both exerted custodial control over the inspectors in leading them to their point of release. Testimony as to such acts together with all the other evidence was sufficient to allow the inference that the actors maintained a purposeful attitude which facilitated the criminal venture of impeding and obstructing inspector Graham, and they were thus aiders and abettors. *See United States v. Barlow*, 152 U.S.App. D.C. 336, 470 F.2d 1245 (1970); *United States v. Thomas, supra; United States v. Archer*, 450 F.2d 1106 (8th Cir. 1971). *Cf. United States v. Barber*, 429 F.2d 1394 (3rd Cir. 1970).

The evidence also sustains the jury's verdict of guilty on Count II with respect to Defendants Crow Dog and Holder. The testimony regarding Crow Dog's involvement with the search of the inspectors and acquiring of keys from them plus the totality of the evidence was sufficient to permit an inference of knowing participation which facilitated the removal and robbery of the pistol belonging to the government.

With respect to Defendant Holder, the question of sufficient evidence to sustain the verdict on Count II is a close one. But resolving the evidence and reasonable inferences therefrom in a manner most favorable to the government, the court is of the view that the evidence permits the inference that this

defendant knowingly committed acts which encouraged or furthered the robbery of the pistol. The record contains testimony that one who called himself "Dan Holder," and who was identified as Defendant Stanley Holder by one inspector at trial, engaged in three types of acts which incriminate him as an aider and abettor. These acts were: (1) stating to the inspectors that property which had been taken from them would be returned upon their release, (2) repeated entrances into the museum while visibly armed with a sidearm, and on one such instance, revealing to the inspectors his authority as security officer and stating that he would keep them informed of their status, and (3) wearing a jacket which was part of the personal property which had been taken from the inspectors.

 However, the court is unable to conclude that any evidence in the record sustains the inference that Defendant Camp knowingly associated himself with the crime of robbing inspector Hanson of a government-owned pistol. The record is devoid of any testimony that this defendant was present at the time the pistol was taken or that he ever had knowledge that the pistol had been or was to be taken. Lack of proof that this defendant had knowledge of the crime and intended that it be committed, or of proof of such participation that knowledge and intent could be inferred, requires that he be acquitted on the charge of aiding and abetting the commission of the robbery alleged in Count II. *See United States v. Barlow, supra; Snyder v. United States, supra; United States v. Smith,* 418 F.2d 223 (6th Cir. 1969); *Johnson v. United States, supra.*

 Defendants' contention that they must be acquitted on every count because the principals have not been identified or convicted is without merit. There is ample evidence in the record to establish that the crimes charged in the indictment were committed by one or more principals. It is not necessary that the principal be convicted or even identified if there is sufficient evidence to convict an accused of aiding and abetting the commission of the crime. *United States v. Untiedt,* 493 F.2d 1056, 1060 (8th Cir. 1974); *Pigman v. United States,* 407 F.2d 237, 239 (8th Cir. 1969); *Hendrix v. United States,* 327 F.2d 971, 975 (5th Cir. 1964).

 Finally, defendants move for a new trial as to all counts on which a judgment of acquittal is not entered. The grounds urged on behalf of the motion are that a new trial is required in the interest of justice, that the verdict is contrary to the weight of the evidence, and that the court erred in its rulings on various motions, matters of trial procedure, and admission of evidence. The granting or denial of a motion for new trial based on a review of the evidence is within the sound discretion of the trial court. *United States v. Stewart,* 445 F.2d 897, 899 (8th Cir. 1971).

Upon a review of the record in this case, it is the view of the court that there is substantial evidence to support the verdict on Count I as to all defendants and on Count II as to Defendants Crow Dog and Holder. It is also the court's opinion that the alleged errors in previous rulings are not well taken for the reasons heretofore given at the time of said rulings. Nor, in the view of the court, do the matters raised in defendants' motion for post-trial relief filed July 25, 1975 set forth a sufficient basis relevant to the cases at bar to warrant a new trial.

It is therefore

Ordered

1. Motions to dismiss denied.
2. Motion for judgment of acquittal granted as to Count II in CR 75–20, and Defendant Carter Camp is hereby acquitted of the charges contained in Count II. Motion denied as to all other counts.
3. Motion for new trial denied.
4. Motion for post-trial relief granted in part and denied in part as indicated in text.