UNITED STATES of America, Appellee,

v.

**Stanley Richard HOLDER, Appellant.**

No. 77–1299.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1977.

Decided Dec. 6, 1977.

Herbert K. Hyde, Jr., Oklahoma City, Okl., on brief for appellant.

David V. Vrooman, U. S. Atty., Sioux Falls, S. D., for appellee; Evan L. Hultman (former U. S. Atty.), Sioux City, Iowa, on brief.

Before STEPHENSON and WEBSTER, Circuit Judges, and MARKEY,* Chief Judge.

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

STEPHENSON, Circuit Judge.

In this appeal appellant Holder claims that the evidence presented against him in his jury trial was insufficient as a matter of law to sustain his conviction as an aider and abettor of the offense of robbery of a revolver belonging to the United States from United States Postal Inspector Hanson, in violation of 18 U.S.C. §§ 1153 and 2112.[1] We affirm the conviction.[2]

The facts surrounding the incident which led to the indictment and conviction of appellant Holder have been set out in detail in this court's decision in *United States v. Crow Dog*, 532 F.2d 1182 (8th Cir. 1976), and in the district court's opinion in the same case, *United States v. Crow Dog*, 399 F.Supp. 228 (N.D.Iowa 1975). They will be repeated only to the extent necessary in dealing with the issue before us.

On the morning of March 11, 1973, four United States postal inspectors, including Postal Inspector Hanson, approached Wounded Knee, South Dakota, for the purpose of ascertaining the condition of the Post Office at Wounded Knee and determining what was needed to restore it to service. They stopped at a roadblock outside Wounded Knee and were ordered out of their car by three armed individuals, one of whom appeared to be Caucasian and the other two, American Indians. The inspectors were then escorted by vehicle into Wounded Knee and parked in front of the museum. They were then informed by codefendant Leonard Crow Dog that they were prisoners of war and would be treated as such. After being ordered to remove their coats, the inspectors were taken into the museum and told they would be searched. Inspector Hanson, fearing an incident, volunteered to their captors that they were armed. The inspectors were then ordered to empty their pockets and remove their weapons and place them on a nearby display case. One of the items removed was Inspector Hanson's revolver (the subject of the instant indictment), which was government property. Inspector Hanson was handcuffed. His revolver was never returned.

One of the inspectors testified at the trial that "a very few minutes" after the inspectors entered the museum, appellant Holder identified himself "as being chief of security * * * and he would keep us advised of the proceedings as it occurred or what was going to happen to us" and that about two hours later "he said that we would be released." Holder also said their personal effects would be returned to them. Holder was observed wearing a Pendleton shirt which belonged to Inspector Schneider but had been taken from him when he was taken into the museum. Holder was wearing a sidearm (revolver) during the occasions he was in the museum in the presence of the inspectors.

A short time after appellant Holder advised the inspectors they would be released, they were taken by pickup truck out of Wounded Knee and eventually returned to Inspector Graham's car and allowed to leave the area. Some of their personal effects were returned to the inspectors; however, none of the weapons were ever returned.

The thrust of Holder's claim on appeal is that no one named him as the robber and no

---

1. Count II of the indictment charged: "On or about the 11th day of March, 1973, at Wounded Knee, in Indian country, within the Pine Ridge Indian Reservation, a reservation under the jurisdiction of the United States, in the District of South Dakota, Stanley Richard Holder, by force and violence and against resistance and putting in fear, unlawfully and wilfully did take from the person of Jack Hanson, a pistol belonging to the United States, in violation of 18 U.S.C. § 1153 and § 2112."

2. The Honorable Edward J. McManus, Chief Judge, Northern District of Iowa, presiding at the trial, denied Holder's motion for judgment of acquittal, holding that the evidence was sufficient to sustain a conviction. *See United States v. Crow Dog*, 399 F.Supp. 228, 240–42 (N.D.Iowa 1975). A five year sentence was imposed but suspended and defendant was placed on probation for three years.

one placed him at the scene before or at the time of the robbery; that the only person putting Holder at the scene indicated Holder was present after the robbery occurred; that such presence and activity on Holder's part after the fact does not make him an aider and abettor; thus, pre-knowledge, requisite to an intent to participate in the criminal venture, was absent.

In reviewing Holder's contention, we, of course, must view the evidence in the light most favorable to the verdict and accept all reasonable inferences that may be drawn therefrom. *United States v. Crow Dog, supra*, 532 F.2d at 1194–95. In *Crow Dog* we reviewed the requisite proof needed to establish guilt as an aider and abettor:

Aiding and abetting requires proof by the government

that the defendant had a "purposeful attitude" and in some manner participated in the unlawful deed. *United States v. Hill*, 464 F.2d 1287 (8th Cir. 1972); *United States v. Kelton*, 446 F.2d 669, 671 (8th Cir. 1971); *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938). *See also United States v. Atkins*, 473 F.2d 308, 310–13 (8th Cir.), cert. denied, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973). Essentially, this requires the existence of "some affirmative participation which at least encourages the perpetrator." *United States v. Thomas*, 469 F.2d 145, 147 (8th Cir. 1972). *See also United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir. 1974).

*United States v. Baumgarten, supra*, 517 F.2d [1020] at 1027. *See also Perriea v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435, 444 (1954); *Nye & Nissen v. United States*, 336 U.S. 613, 618–19, 69 S.Ct. 766, 769, 93 L.Ed. 919, 924–25 (1949).

A review of the evidence reveals (1) that appellant Holder was present throughout most of the time the postal inspectors were being held in captivity in the museum in Wounded Knee; (2) that a few minutes after the inspectors were escorted into the museum Holder appeared and announced he was in charge of security and would keep the captives advised of the proceedings; (3) that Holder was armed when he appeared in the museum and spoke to the inspectors on various occasions; (4) Holder's statement to the inspectors that their property would be returned to them upon their release; and (5) that Holder was observed wearing a shirt which was part of the personal property taken from one of the inspectors.

From the foregoing the jury could reasonably infer that appellant Holder occupied a position of leadership and was actively associated with and participated in the criminal venture which included the unlawful taking of the weapon belonging to the United States. We are satisfied from our review of the record that the evidence adequately supports appellant Holder's conviction as an aider and abettor of the crime charged.

Affirmed.