**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles GARY, Milton Wilson,
Defendants-Appellants.**

**No. 71–1638.**

United States Court of Appeals,
Ninth Circuit.

Aug. 16, 1971.

Rehearing Denied Sept. 27, 1971.

Marks, Sherman & Schwartz, Beverly Hills, Cal., for defendants-appellants.

Darrell Macintyre, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES and HUFSTEDLER, Circuit Judges, and NIELSEN, District Judge.*

BARNES, Circuit Judge:

Appellants Gary and Wilson attack their conviction before a jury of two counts of conducting heroin transactions in violation of 21 U.S.C. § 174.

The evidence must be discussed. The testimony discloses that on March 27, 1970, Agent Sutton of the Federal Bureau of Narcotics and Dangerous Drugs accompanied one "Rip", an undercover informant, to appellant Gary's residence in Lompoc, California. After speaking to Gary outside the residence, Sutton and Gary went inside. Sutton testified that they discussed the price and quantity of heroin that Gary could deliver. He stated that while Wilson, Gary's half brother, was present, the latter agreed to sell him 12 spoons of heroin, which could be cut one and one half times, for $600. Sutton further testified that Gary said he did not want to meet anyone and that he had to be careful. After an exchange of telephone calls, Sutton agreed to meet Gary at a nearby shopping center. He testified that Gary said he had the heroin ready for delivery. Sutton also testified that he arrived at the shopping center accompanied by the informant a short time later; saw Gary parked in a 1966 Cadillac; and observed Wilson cruising the area in a 1958 blue Chevrolet. According to Sutton, Gary motioned the agent to follow him, and Sutton did follow him to his house on North "O" Street. Gary then got into the government vehicle, told Sutton to give the money to "Rip" and drive back to Laurel and "O" Street. On the way, Gary had Sutton stop and Gary made a call at a phone booth. Gary then had Sutton proceed to "N" Street where they encountered Wilson working on the blue Chevrolet. Sutton testified that Gary instructed the informant to get out of the car. As "Rip" and Gary walked across the street, the informant handed the $600 to him. The informant then reached down and picked up an item lying on the ground near Wilson and his car, and returned to Sutton's car with Gary. Upon entering the automobile, "Rip" handed Sutton a packet of heroin. After telling Sutton to contact the informer for future purchases, Gary left the government car, got into Wilson's and the appellants drove off.

Sutton testified that the second incident occurred on April 27, 1970, when he again called Gary. Gary was not at home but returned the call later that day. They agreed that he was to sell Sutton one ounce of cocaine and one ounce of heroin, and that Sutton would contact him when he arrived in Lompoc the next day. On April 28, Sutton called Gary who said that the heroin was not yet ready for delivery. After several

* The Honorable Leland C. Nielsen, United States District Judge, Southern District of California, sitting by designation.

more calls, Wilson told him that he was to meet Gary at the shopping center.

Around 6:15 p. m., Sutton went to the shopping center to wait for Gary. Gary arrived a short time later and made a phone call. According to Sutton's testimony, Gary then joined him and they entered the government vehicle. After counting the $1,500 which was the agreed upon price for the narcotics, Gary instructed Sutton to roll it up with a rubber band and place it on the curb. Gary then picked up the money and told Sutton to follow him out of Lompoc on Highway 1. Shortly after they left Lompoc, Gary made a telephone call, and then stated to Sutton that he thought he (Sutton) was a policeman and that he (Gary) was being followed. Gary then returned the money and said he did not want to sell any heroin or cocaine.

Gary's testimony differed from Sutton's. He said that he met Sutton at the shopping center accidentally. He stated that he rebuffed Sutton's importunings for heroin and told him he should see "Rip", the informer. Sutton was insistent, however, and "forced" the money on him. Gary testified that he did not want Sutton coming to his home because his mother was visiting there. He therefore drove around looking for "Rip" and later returned the money.

At approximately 6:37 p. m., Wilson was seen leaving Gary's house in the blue Chevrolet. He was observed parked in the Chevrolet on Highway 1 several miles north of Lompoc at 7:00 p. m. A few minutes later, heroin and cocaine were found where Wilson had been parked.

At trial, both appellants denied participation in either transaction. The jury found them both guilty on two counts of concealment, facilitation and transportation of heroin and a mistrial was declared as to two other counts relating to a sale and a 26 U.S.C. § 4705(a) violation. Our jurisdiction rests upon 28 U.S.C. § 1291.

Many of appellant's claims of error can be summarily dismissed:

(1) Pursuant to the teachings of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1952), we have held only recently that an entrapment defense need not be decided by the trial court before submission to the jury if there is a disputed issue of fact. United States v. Griffin, 434 F.2d 978, 982 (9th Cir. 1970). The rule in this Circuit is that a defendant must admit commission of the acts charged before raising the defense of entrapment. Perez v. United States, 421 F.2d 462, 466 (9th Cir. 1970). Ortega v. United States, 348 F. 2d 874 (9th Cir. 1965).

(2) In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Supreme Court upheld the § 174 presumption of knowledge of illegal importation arising from unexplained possession of heroin. The Court held that it is rational and constitutionally permitted despite the small possibility of domestic synthesis. Moreover, this Circuit has consistently held that constructive possession is sufficient to invoke the *Turner* presumption. Arellanes v. United States, 302 F.2d 603 (9th Cir. 1962); Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962).

(3) Appellants next contend that the denial of their motions for separate trials was an abuse of discretion. In Parker v. United States, 404 F.2d 1193 (9th Cir. 1958), we pointed out the strong government interest in joint trials in cases such as this. The only real prejudice that is here claimed is the response given by Agent Sutton to a question raised by appellant Gary's attorney. He asked whether Sutton or any of his deputies had ever made a purchase of narcotics from Gary. Sutton answered in the affirmative and described a sale made through Wilson on a date not here in issue. (R.T. 281–83). The Court immediately cautioned the jury that they were to decide guilt or innocence only in relation to the two transactions in question. Appellants had opportunity to cross-examine the witness, and each oth-

er, concerning this testimony. We therefore find no confrontation problems under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). In light of the fact (a) that the testimony was relevant to the common plan of which the offense was a product; (b) that a proper cautionary instruction was given, and (c) that ample opportunity to cross-examine existed, we find insufficient prejudice to hold the trial court abused its discretion.

■ (4) Appellants next claim that the jury verdict was inconsistent and therefore provides grounds for a new trial. We fail to understand the basis for this argument, especially since counsel for appellants concedes that the verdict was not logically inconsistent. The jury unanimously agreed concerning appellants' guilt on the concealment and facilitation counts but could not unanimously agree upon the counts based upon alleged sales. On the evidence we find the jury verdict was completely proper and totally consistent.

■ (5) Appellants also urge that the seizure of the heroin was constitutionally invalid. They provide, however, no specific delineation of precisely why they believe the evidence obtained by the use of the government undercover agents should be suppressed. They merely state that the police practices employed constitute impermissible fraud, trickery and deceit. In Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), the Supreme Court noted that the use of agents and decoys is necessary in dealing with illegal narcotics. See also United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Agent Sutton's testimony (which was apparently accepted by the jury), did not disclose any deceit beyond that which is required by the nature of the narcotics traffic. Our search of the record reveals no constitutionally offensive government conduct, certainly none at all resembling that which was proscribed in Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1920).

■ (6) Appellants also raise the contention that the evidence was insufficient to establish constructive possession as to either appellant. After examining prior cases in this Circuit examining the concept of constructive possession in this context, appellants' counsel concludes that

"In the instant case, neither appellant was in actual possession of narcotics. Narcotics were not found on their person, in their automobiles, or in their home. With regard to appellant Gary, there is *no* evidence that he ever had actual possession. Under these circumstances, constructive possession has not been established. Thus, the presumption under 21 U.S.C. § 174 is inapplicable, and the evidence is insufficient to sustain the verdict." (Appellant's Brief, 19).

In examining appellants' claim, we are compelled to consider the evidence with a view most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941). In this light, the evidence discloses that Gary arranged to make sales on March 27 and April 28, 1970, and accepted payment on these dates. On the first occasion, Gary led Sutton to his co-defendant, Wilson, where the heroin was found in the quantity ordered. On the second date, Gary was leading Sutton in the direction where the narcotics were eventually found to be located when he decided that Sutton was a policeman and renounced the deal, returning the purchase price. As to Wilson, the narcotics were in the immediate proximity of his car and of himself in each transaction, and no reasonable explanation for their presence other than his transporting them was offered. Contrary to the implication of appellants' argument, there is no requirement that either appellant ever had actual possession, before constructive possession can be found. There is sufficient evidence in Wilson's case to support a finding of actual possession.

The evidence reveals that both Wilson and Gary had control, *i. e.*, had the power to produce the narcotics which Gary agreed to sell. It is sufficient for the jury to have concluded beyond a reasonable doubt that Gary knew of the narcotics and exercised the requisite dominion and control to be deemed constructively in possession. See United States v. Cepelis, 426 F.2d 134 (9th Cir. 1970); Williams v. United States, 418 F.2d 159 (9th Cir. 1969). As we said in *Cepelis supra*, 426 F.2d at 136:

> "Here the trial judge could have found sole or joint possession in the appellant from his demonstrated ability to arrange for the delivery of the hashish."

Similarly, Gary demonstrated the power to produce what he promised.

■ (7) Finally, appellants argue that the trial court's instruction on a common scheme or plan (R.T. 494–96) erroneously allowed the jury to impute to Gary any possession or knowledge of the narcotics by Wilson. It is clearly the rule in this Circuit that the § 174 presumption may be validly applied only to one who has actual or constructive possession of the illegal drugs. Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962). In *Hernandez, supra,* we stated that the knowledge and possession of a co-conspirator or an aider and abettor must be proved independently and may not be supplied by the rules of imputed responsibility traditionally applied in such cases. Moreover, we criticized the use of such instructions in cases where the presumption is utilized. In Hill v. United States, 379 F.2d 811 (9th Cir. 1967):

> "In this case the instructions in reference to 'aider and abettor' or 'common plan' should not have been given, or the district court should have emphasized the requirement of finding possession in the appellant personally." (*Id.*, at 814.)

Although such aider-abettor instruction was unfortunately given in this case, our review of the record reveals a sufficient emphasis on the possession requirement in the instruction to counteract the harm created by that early exposition of one aspect of the law. While the trial court did not speak in the usual terms of dominion and control; it, in essence, instructed the jury that Gary had to be found in constructive possession for it to render a guilty verdict as to him.[1] We therefore hold that the in-

---

1. "Now, in order for these men to be found guilty of having transported and concealed the heroin, as would be necessary in order to make out any of these offenses, you must find that they had possession of it. But in order to find that Mr. Gary had possession of it, you don't have to find that he actually had it in his hand. He can have had possession of it if he knew that his brother, pursuant to his direction or pursuant to his understanding, had actual possession of it. This comes down to the point where I discussed before that in order to find a person guilty of any particular offense, you don't have to find that he himself does every act of the offense if others are participating in a manner that he knows that they are participating and if together they are carrying · out the common scheme. But, of course, once again, in order to find Mr. Gary guilty, you must find that under the evidence that he himself made the deal for the sale of the heroin in March, and that he knew that pursuant to this sale that his brother would be getting the heroin and putting it at a prearranged place and that he brought Mr. Sutton to that prearranged place, and sure enough the heroin was there, and they made the transaction. Now, if you find those things took place, and if you find them beyond reasonable doubt, then you may find Mr. Gary guilty of the offenses alleged in Counts One, Two and Three.

With respect to Mr. Wilson just the converse is true. Mr. Wilson doesn't have to have made the deal for the sale, but if he knew that his brother made the deal, and that his participation was to get the stuff there at the place of agreed delivery, and if those things happened, then you may find Mr. Wilson guilty as charged in Counts One, Two and Three.

And the same thing is true with respect to Count Four. If Mr. Gary made the deal and caused Mr. Wilson to be out there in that lookout place on Highway 1, and if Mr. Wilson was there, knowing of the deal that he was supposed to have the

struction, even though imperfect, does not constitute reversible error.

We affirm the conviction of each defendant.

heroin out there, you may find both of them guilty. But if you cannot find any of those elements true beyond reasonable doubt, then, of course, you may not find them guilty."