UNITED STATES of America

v.

William A. RAPER, Appellant.

UNITED STATES of America

v.

Eli B. CHILDS, Jr., Appellant.

Nos. 81–1275, 81–1302.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1981.

Decided April 30, 1982.

Sally Katzen, Washington, D. C. (appointed by this Court), with whom Thomas F. Connell, Washington, D. C., was on the brief, for appellant Raper in No. 81–1275.

Fred C. Zacharias, Washington, D. C. (appointed by this Court), with whom William A. Dobrovir, Washington, D. C., was on the brief, for appellant Childs in No. 81–1302.

Sylvia Royce, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, John R. Fisher and Robert B. Cornell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before MacKINNON, ROBB and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

Opinion concurring in part and dissenting in part filed by Circuit Judge HARRY T. EDWARDS.

MacKINNON, Circuit Judge:

Appellants Eli B. Childs and William A. Raper were indicted in Count I charging possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a). The indictment on this count specifically cited and relied upon the aiding and abetting statute, 18 U.S.C. § 2. Count II charged unlawful possession of heroin in violation of D.C.Code § 33–402 and also relied upon the D.C. aiding and abetting statute, D.C.Code § 22–105 (1973). A jury trial concluded with verdicts of guilty against both appellants on the federal charge of possession with intent to distribute. The D.C. charge was subsequently dismissed. Childs and Raper appeal their respective convictions on procedural grounds. Raper also contends that the absence of any evidence of his *actual* "possession" of the heroin leaves the record with insufficient evidence to support his conviction of *possession* with intent to distribute. The government contends that his acts which aided and abetted Childs in his possession with intent to distribute justify his conviction as a principal under 18 U.S.C. § 2. We affirm the convictions of both appellants.

I

In the evening of November 5, 1980, at approximately 7:15 p. m., Officer James Francis of the District of Columbia Metropolitan Police Department was assigned with two other officers to uncover narcotics trafficking in the 1300 block of W Street, N.W. (Tr. 94–95). This is an area where there exists a "high narcotics trafficking of heroin." (Tr. 5). Using binoculars from a vantage point in a nearby building (Tr. 95), Francis observed appellants Raper and Childs converging near the intersection of 14th and W. (Tr. 96, 104–105). Appellants spoke briefly when they met, then they separated and Raper walked five or six feet away and confronted an unidentified "Third Man." Following little or no verbal exchange, the Third Man handed Raper some paper money (Tr. 97, 109) but was not

observed to receive anything in return. Raper next approached Childs, spoke briefly with him and then moved a short distance away. The Third Man then walked to Childs, who put his hand in the right pocket of his trench coat (Tr. 112), withdrew it, and without more ado placed his hand in the upturned palm of the Third Man, who in turn closed his hand, turned and briskly walked away. (Tr. 98, 110, 112).

Officer Francis concluded that a narcotics transaction had taken place and immediately radioed the two other officers, Willis and Falkosky, who promptly approached Raper and Childs and placed them under arrest. (Tr. 99, 176–77). The officers then searched appellants. They found $66.00 on Raper's person (Tr. 101) and, on closer inspection, following an inconclusive first search, found thirteen packets ("quarters") of heroin secreted in glassine packets in Childs' underwear. (Tr. 119, 209–10, 210–15). The officers also found that Childs' trench coat had an inside slit in the right-hand pocket, through which Childs could reach straight through to his underwear and obtain the packaged heroin. (Tr. 182).

At trial, Detective Johnny St. V. Brown qualified as an expert witness for the government on D.C. narcotics transactions. He testified that the quantity of heroin found on Childs' person was more than could reasonably be assumed to be for strictly "personal" use; (Tr. 258–259) that the typical street price for one "quarter" of heroin as of November 1980 was $40–$60 (Tr. 250); and that the transactional activities employed by appellants and the Third Man were typical of the "team" procedures employed by some narcotics traffickers in the D.C. area. One man possesses the drugs, the other man receives the money from the purchaser. Then the possessor on word or sign from his accomplice delivers the drugs to the purchaser who paid his accomplice.

Those engaged in distributing drugs apparently think there are some advantages afforded them by operating in this manner. They reason that the man who receives the money, if arrested and charged, can assert that he never possessed the drugs because he would not have any drugs on his person. The other member of the team who possesses the drugs believes that he can protect against conviction by showing he never received any money, and he even might contend that the drugs he did possess were for his own use and not for distribution. The "team" procedure also has a personal security aspect in that any robber or law enforcement officer would have two men to deal with, and splitting the money and the heroin between them might make it possible to save one or the other. In any event when two men use the team method, additional proof is required and in some circumstances one participant may escape arrest. If only one person was arrested, the case would involve additional prosecutive difficulties. (Tr. 248–250).

Appellants testified that their presence in the vicinity where they were arrested had nothing whatsoever to do with the alleged narcotics sale; (Tr. 279–83) and Childs modeled a trench coat for the jury that he was *allegedly* wearing at the time of arrest and claimed that the coat had *no* slit in the pocket as described by the arresting officer. (Tr. 306–310). That testimony was impeached moments later, however, when the government produced a picture of Childs when he was arrested at the scene which showed Childs wearing a different coat. (Tr. 313–14). Childs quickly "corrected" his testimony by saying that he had been wearing his father's coat when arrested. (Tr. 326).

The jury found both appellants guilty of "possession with intent to distribute" and each received a sentence of two to eight years in prison, with a special parole term of three years. The offense of simple possession charged under the D.C. Code was dismissed by the judgment.

## II

Appellant Childs does not attack the sufficiency of the evidence but challenges his conviction on several procedural grounds. He contends that his conviction should be reversed on the grounds (1) that a portion

of the trial was conducted in his absence in violation of Fed.R.Crim.P. 43; (2) that the trial court allegedly improperly refused to permit him to take the stand for the *limited purpose* of testifying about the trench coat; (3) that the trial court violated Fed.R. Crim.P. 30 by instructing the jury on the "defendant as a witness" theory and on the "aiding and abetting" charge after assuring counsel prior to closing argument that no such instructions would be given; and (4) that the trial court erred and confused the jury by giving them instructions on aiding and abetting possession with intent to distribute, a crime Childs "could not possibly have been guilty of." We find the arguments in support of these points to be unpersuasive.

(a) The sufficiency of the evidence against Childs.

Childs was found at the scene of the crime in possession of a quantity of heroin in his underwear that was far greater than that "needed" for "personal use." Our decision in *United States v. Staten*, 581 F.2d 878, 886 (D.C.Cir.1978), by Judge Robinson states: "Our decisions in the recent past have made clear that intent to distribute may be inferred from possession of drug-packaging paraphernalia or of a quantity of drugs larger than needed for personal use." *Citing United States v. Herron*, 567 F.2d 510, 513 (D.C.Cir.1977); *United States v. Davis*, 562 F.2d 681, 685–86 (D.C.Cir.1977); and *United States v. James*, 494 F.2d 1007, 1031 (D.C.Cir.), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). In our judgment the packaging and concealment here of the amount of heroin that exceeded the amount necessary for the possessors immediate personal use, and the possession of such heroin on the street in an area known for its "high narcotic trafficking of heroin" (Tr. 5) also tends to support an intent to distribute.

In addition to the fact that the quantity indicates an intent to distribute, after the Third Man handed Raper some paper money, Childs was seen by Officer Francis to reach into his trench coat pocket, where he had access to heroin (in "quarters"), and then, after extracting his hand, to place it in the palm of the Third Man, who immediately closed his hand and walked away. The amount of money found on Raper's person immediately after his arrest was approximately the price then being charged for a "quarter" of heroin. On all of such evidence the jury found that Childs beyond a reasonable doubt was guilty of possession of heroin with intent to distribute. We agree that the record supports the jury verdict.

(b) The continuance of the trial in Childs' absence.

Childs claims that the court improperly continued the trial in his absence in violation of Rule 43 of Fed.R.Crim.P., which provides:

Rule 43. Presence of the Defendant. (a) Presence Required. The defendant shall be present at . . . every stage of the trial . . . except as otherwise provided by this rule.

(b) Continued Presence not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived his right to be present whenever a defendant, initially present,

(1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the trial court of his obligation to remain during the trial) . . .

The circumstances involved in this contention occurred on the second day of trial. When the trial was recessed at the end of the first trial day, the judge warned both defendants that the trial would resume the next day promptly at 9:30 a. m. The next morning (Tr. 273), when the judge finally took the bench at 10:08 a. m., Childs was absent and the judge inquired as to his whereabouts. His counsel responded that he was informed Childs was en route to the courthouse. (Tr. 277–278). Following that statement the judge ordered that a bench warrant issue and that the trial resume.

Childs' counsel did not object. Childs entered the courtroom at 10:25 a. m. During the 17 minutes he was absent from the trial his co-defendant Raper was on the stand and did not testify to anything prejudicial to Childs' case.

■ A defendant has a constitutional right under the Fifth and Sixth Amendments, which is recognized by Rule 43, to be present at his trial on criminal charges. That right may be waived, however, in the sound discretion of the trial judge if the defendant voluntarily, and without justification, absents himself from the trial without good cause. *United States v. Barton,* 647 F.2d 224, 238 (2d Cir. 1981); *United States v. Reed,* 639 F.2d 896, 903–904 (2d Cir. 1981); *United States v. Davis,* 486 F.2d 725 (7th Cir. 1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1569, 39 L.Ed.2d 876 (1974); *Cureton v. United States,* 396 F.2d 671, 675 (D.C.Cir.1968). ("When trial has begun in defendant's presence, it may continue in his absence to and including the verdict when he voluntarily absents himself.")

■ There was no indication during the trial, or since, that Childs' absence was anything but voluntary. Moreover, the continuance of the trial in Childs' absence was within the discretion of the judge.

The disadvantages of the alternatives of postponing or severing the trial outweighed the burdens that such action would impose on the court, the government, the witnesses, the co-defendant, and the public. The validity of the court's decision to proceed with the trial was buttressed when Childs showed up 15 minutes late with no excuse for his tardiness. We therefore rule that the court did not abuse its discretion in continuing the trial in Childs' absence.

(c) Childs' request to take the stand for a limited purpose.

During the trial Childs requested that he be permitted to take the stand for a limited purpose. His intent was to introduce, without authenticating testimony of any kind, a trench coat he claimed to have been wearing at the time of his arrest. (Tr. 269, 271–272). The court denied this request saying

When you put your client on as a defendant, you put him on for all purposes. He is a sitting duck, and when you put him on, the prosecutor can ask him anything that might have any relevance to this case. And that includes what color eyes his grandmother's cow has if it sheds any light on the issues of this case (Tr. 272).

■ Childs contends that the court erred in this ruling. We disagree. The matter is covered by Rule 611(b) of the Federal Rules of Evidence:

(b) Scope of cross-examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

When a defendant in a criminal trial takes the stand the scope of cross-examination is very broad. As here, the proffered testimony, limited as it might have been, was intended to prove that the defendant was not guilty, i.e., that he could not have reached the heroin in his underwear because there was no slit in the righthand pocket of the trench coat he was wearing, and thus that he could not have delivered any heroin to the Third Man. Such testimony is intended also to convey the implicit inference that Childs had no intent to distribute heroin. The implications of the proffered testimony were very broad and any question which would have elicited testimony that was reasonably related to the inferences that might reasonably be drawn from his direct testimony would have been permissible.

In addition, regardless of the limits on cross-examination the Rule permits the trial judge "in the exercise of discretion, [to] permit inquiry into additional matters [with respect to any witness] as if on direct examination." Rule 611(b). What the trial judge here was indicating by his ruling was that when the defendant takes the stand he is generally held to be open to very wide questioning on relevant matters. "[M]at-

ters affecting the credibility of the witness" are always open to cross-examination and this a very fertile field that Rule 611(b) specifically recognizes is open.

The government is not limited on cross-examination of defense witnesses to those portions of an event which are favorable to the defense. In *McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971), the Supreme Court noted,

> It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination.

The same result was reached in *Brown v. Walker*, 164 U.S. 591, 597–598, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896); *Fitzpatrick v. United States*, 178 U.S. 304, 314–316, 20 S.Ct. 944, 948–949, 44 L.Ed. 1078 (1900); and *Brown v. United States*, 356 U.S. 148, 73 S.Ct. 622, 2 L.Ed.2d 589 (1958); *Cf. Hood v. United States*, 365 F.2d 949 (D.C.Cir. 1966). It would have been very unreasonable to limit the prosecutorial examination as Childs requested.

The upshot of the denial of Childs' request was that he took the stand and introduced what he claimed was the trench coat he was wearing at the time of his arrest. On cross-examination this was disclosed as being a hoax and the defendant's credibility was destroyed. The prosecutor did not further cross-examine the defendant. Therefore, nothing related to this episode constituted prejudice or error.

For the above reasons we find that Childs' contentions are all without merit.

### III

Raper's appeal contends that his conviction should be reversed because the Government failed to show he was in actual or constructive possession of the seized narcotics. In addition he argues that (1) the instruction on aiding and abetting was given the jury in violation of Fed.R.Crim.P. 30, and (2) that such instruction, as given, im-

properly permitted Raper to be convicted of unlawful *possession* with intent to distribute without proof of his actual possession of the heroin. We recognize the strength of these arguments but conclude they must fail in view of established law and the factual proof adduced at trial.

(a) Constructive possession of the heroin with intent to distribute.

Possession of a controlled substance with intent to distribute, as prohibited by 21 U.S.C. § 841(a)(1), may be either actual or constructive. *United States v. Grayson*, 597 F.2d 1225 (9th Cir.), *cert. denied*, 444 U.S. 873, 875, 100 S.Ct. 153, 157, 62 L.Ed.2d 99, 102 (1979); *United States v. Batimana*, 623 F.2d 1366 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980); *United States v. Staten, supra*, 581 F.2d at 883. Constructive possession may be shown through direct or circumstantial evidence of dominion and control over the contraband, *United States v. Grayson*, 597 F.2d 1225 (9th Cir. 1979); *United States v. Staten, supra*, 581 F.2d at 883; *United States v. Valentin*, 569 F.2d 1069, 1071 (9th Cir. 1978); *United States v. Littrell*, 574 F.2d 828 (5th Cir. 1978), and may be found to exist where the evidence supports a finding that the person charged with possession was knowingly in a position, or had the right to exercise "dominion and control" of the drug either personally or through others. *United States v. Staten, supra*, 581 F.2d at 883; *United States v. Davis*, 562 F.2d 681, 684, n.39 (D.C.Cir.1977); *United States v. Watkins*, 519 F.2d 294, 298 (D.C. Cir.1975); *United States v. Davis*, 461 F.2d 1026, 1035 (3d Cir. 1972); *United States v. Weaver*, 458 F.2d 825, 826 (D.C.Cir.1972); *United States v. Gary*, 447 F.2d 907, 910–11 (9th Cir. 1971); *Brothers v. United States*, 328 F.2d 151, 155 (9th Cir.), *cert. denied*, 377 U.S. 1001, 84 S.Ct. 1934, 12 L.Ed.2d 1050 (1963) (the dominion or control may be jointly shared).

We distinguish the ruling in *United States v. Jackson*, 526 F.2d 1236 (5th Cir. 1976), cited by Raper, on its facts. In *Jackson*, the 5th Circuit reversed a conviction

for unlawful possession with intent to distribute that was grounded in an aiding and abetting theory. However, Jackson never associated himself with the possession element of the charged offense (possession with intent to distribute, 21 U.S.C. § 841(a)(1)) by exercising any dominion or control over the contraband cocaine or otherwise acting to come within 18 U.S.C. § 2, whereas Raper did exercise such control and could be concluded to have counselled the offense. We also refuse to follow decisions under the prior federal narcotics act, 21 U.S.C. § 174, that was repealed and replaced by the Controlled Substances Act, P.L. 91–513, Oct. 27, 1970, 84 Stat. 1242–1296, 21 U.S.C. § 801 et seq. The legal underpinnings of the prior act, involving a conclusive presumption, were such that the decisions thereunder are not applicable to the offenses here charged under the present Act, 21 U.S.C. §§ 841–851, 84 Stat. 1260–1270.

■ In the "sale" viewed by the police, Raper spoke first to Childs (who had the packages of heroin), and then to the Third Man. After Raper received paper money from the Third Man, Raper again talked to Childs. Then the Third Man approached Childs, who appeared to withdraw something from his right coat pocket and hand it to the Third Man. This evidence permits a number of circumstantial inferences with respect to several material elements of the crime that are sufficient to support a guilty verdict against Raper on a constructive possession theory.

On such testimony the jury could reasonably have found that Raper, in his conversations with Childs and the Third Man, arranged the sale, and that Raper thereby actually *controlled* the heroin in Childs' physical possession, insofar as Childs did not deliver it until Raper was paid, kept the money and then conversed with Childs conceivably to indicate that he had been adequately paid. Raper's retention of the money and Childs' apparent delivery of the narcotics, under the circumstances, could be considered as conclusive indicators of Raper's control of the heroin in Childs' actual possession. The Third Man was apparently unable to secure the "small object" of heroin from Childs until he had delivered the money to Raper.

Add to the above the expert testimony of Detective Brown that the activity of the participants was a typical *modus operandi* for narcotics traffickers in the D.C. area and that the paper money found on Raper's person was roughly the amount one would expect to receive on sale of one quarter of heroin, and the jury could reasonably have inferred that Childs passed a "small object" to the Third Man that was in reality a quarter of heroin from the stash of heroin in Childs' underwear. In sum, the jury could properly have found that the testimony described above justified a finding that Raper was in constructive possession of Childs' heroin with intent to distribute.

(b) Aiding and abetting possession of heroin with intent to distribute.

■ We also hold that the evidence is sufficient to support a jury finding that Raper aided and abetted Childs' unlawful possession with intent to distribute. This holding cannot be read out of the case, as the dissent suggests, because appellant contends that it was improper for the court to give the aiding and abetting instruction. That Raper brought himself within 18 U.S.C. § 2 follows from our conclusion that when Raper received the money from the purchaser and then spoke with Childs, before Childs made the surreptitious delivery to the Third Man, Raper knowingly associated with Childs in Childs' possession of the heroin with the intent to distribute. In so doing Raper thereby sought to further Childs' intent by receiving the money for heroin that his accomplice would distribute.

We thus find that the jury could also hold that Raper was guilty as a principal of possession with intent to distribute, 21 U.S.C. § 841(a), because under 18 U.S.C. § 2 he aided and abetted Childs in his offense.

The aiding and abetting statute has broad implications and is one of the most important in the United States Criminal Code. It provides:

§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

█ Under this statute, there must be a guilty principal before a second party can be found to be an aider or abettor. *United States v. Staten, supra* 581 at 887; *United States v. Cades*, 495 F.2d 1166, 1167 (3d Cir. 1974); *United States v. Barfield*, 447 F.2d 85, 89 (5th Cir. 1971); *United States v. Rodgers*, 419 F.2d 1315, 1317 (10th Cir. 1969). That second party, however, upon a finding that he aided or abetted the offense, is guilty under the statute as a principal. *United States v. Fultz*, 602 F.2d 830, 833 (8th Cir. 1979); *United States v. Harris*, 523 F.2d 172 (6th Cir. 1975).

█ The elements of aiding or abetting an offense are (1) the specific intent to facilitate the commission of a crime by another, *United States v. Prince*, 529 F.2d 1108 (6th Cir.), *cert. denied*, 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976); (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the offense. *United States v. Staten, supra*, 581 F.2d at 886–887; *United States v. Wiley*, 492 F.2d 547, 551 (D.C.Cir.1973).

The classic interpretation of the aiding and abetting rule of law is that by Judge Learned Hand in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938), which was quoted by Justice Douglas in *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949):

In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about,

that he seek by his action to make it succeed." L. Hand, J., in *United States v. Peoni*, 100 F.2d 401, 402.

*See also United States v. Staten, supra*, 581 F.2d at 887; *United States v. Holder*, 566 F.2d 617, 619 (8th Cir. 1977); *United States v. Kelton*, 446 F.2d 669, 671 (8th Cir. 1971).

█ What is required on the part of the aider is sufficient knowledge and participation to indicate that he knowingly and wilfully participated in the offense in a manner that indicated he intended to make it succeed. It is not new law to hold one guilty as a principal because he aided and abetted a substantive crime that under the facts it was impossible for him to commit separately. A good example of the broad reach of the aiding and abetting statute is to be found in *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895), which held that a national bank offense, which could only be committed by an officer of the bank, may be committed by persons who are *not* officers if they aid or abet an officer in the commission of the crime.

In determining whether Raper aided and abetted Childs in his possession of the heroin he possessed with intent to distribute, the facts are to be construed most strongly in favor of the jury's verdict. *United States v. Crow Dog*, 532 F.2d 1182, 1195 (8th Cir. 1976); *Koolish v. United States*, 340 F.2d 513, 519 (8th Cir.), *cert. denied*, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965). So construed, it could properly have been found by the jury from the testimony that Raper *intended* Childs, *the guilty principal*, to *make the sale* to the Third Man, *knew* that Childs was making the sale, and, indeed, *participated* as a middleman in the sale by collecting the money from the Third Man, directing the Third Man to Childs for the transfer of the heroin, and by informing Childs that he had been paid and that Childs was accordingly free to deliver the heroin to the Third Man. Raper's acts, in apparently arranging the sale, receiving the money, and *counselling* Childs satisfied all the requirements under 18 U.S.C. § 2(a) for conviction as an aider or abettor.

In addition Raper could have been found to have aided and abetted the offense when he conferred with Childs on two occasions before Childs made the delivery to the Third Man. In these conferences the jury could conclude that he "counselled" Childs concerning the heroin that he possessed with intent to distribute.

 Raper, however, contends that it is impossible to *aid or abet* "possession of heroin with intent to distribute." His brief argues: "As a matter of common sense, one cannot aid and abet another's possession of a controlled substance; either the accomplice possesses it, or he does not." (Pet. Raper's Brief at 29). The argument is overly literal and ignores the breadth of the aiding and abetting statute and the many decisions applying it. Possession (be it actual or constructive by the aider) is not an absolute element that must be shown to justify a conviction for aiding and abetting possession with intent to distribute. All that is necessary is to show some affirmative participation which at least encourages the principal offender to commit the offense, with all its elements, as proscribed by the statute. *United States v. Buttorff*, 572 F.2d 619, 623 (8th Cir. 1978); *United States v. Crow Dog, supra*, 532 F.2d at 1195; *United States v. Baumgarten*, 517 F.2d 1020, 1027 (8th Cir. 1975). Such was the pronouncement by Chief Judge Gibson in *United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir. 1974), where a party who previously supplied LSD to a drug trafficker, and who later received a portion of the proceeds after the drug had been sold, was convicted of aiding and abetting the trafficker's *possession of the LSD with intent to distribute.* In affirming the conviction the court completely eschewed listing possession as an absolute criteria for conviction on aiding and abetting grounds, and concluded that the "knowing association and participation in [the possessor's] possession . . . with intent to distribute" was sufficient. *Id.*

This court reached a similar conclusion in *United States v. Staten, supra*, 581 F.2d at 886–87, which holds that a conviction for aiding and abetting *possession* of a controlled substance with intent to distribute does not require the defendant to have actual possession of the prohibited drug. Relying on 18 U.S.C. § 2(a), the opinion by Judge Robinson states:

Certainly nothing about drug-*possession* offenses is so distinctive as to remove them from the ambit of aiding-and-abetting doctrine. . . . As the Supreme Court has admonished, "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, and that he seek by his actions to make it succeed.' "

*Id.* at 886 (emphasis added) (footnotes omitted). Therefore actual or constructive possession is not required in "drug-possession offenses" when the normal elements of the aiding and abetting statute are satisfied.[1]

---

1. The dissent has difficulty accepting the breadth of the aiding and abetting statute, 18 U.S.C. § 2, and relies basically on two points, three cases and a *repealed* statute. However, one case is *not* contra and the other two cases were decided under a statute now repealed. Those decisions are not applicable to offenses under the present statute, the Controlled Substances Act enacted in 1970. (84 Stat. 1260).

First, the Fifth Circuit opinion in *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978), states

in a prosecution for aiding and abetting possession of cocaine with intent to distribute [under the present statute] there must be evidence connecting the defendant with both aspects of the crime, possession and intent to distribute.

This statement is not inconsistent with the foregoing opinion. However, the dissent is in error if it means, and it apparently does, to infer that one cannot be found guilty of aiding and abetting "possession with intent to distribute" under 21 U.S.C. § 841(a) unless actual or constructive *possession* is proved for the aider or abettor. That is the practical equivalent of requiring that one must be a principal to be an aider. No recognized decision supports such highly restrictive construction of the aiding and abetting statute.

All that *Longoria* holds is that a conviction based on aiding and abetting under 18 U.S.C. § 2 must show that the defendant intended to participate or assist in some way in both elements of the crime, i.e., that he intended to and did *aid the crime charged.* That is self-evident. He could do this in a myriad of ways; but all

that would be necessary under *Longoria*, or the statute, would be for him to commit just one of seven acts, i.e., to aid, abet, counsel, command, induce, procure, or wilfully cause an act that in some manner would indicate an intent to "associate him . . . with the venture [possession with intent to distribute], that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed." *United States v. Peoni, supra; Nye & Nissen v. United States, supra.*

An aider and abettor of an offense under 21 U.S.C. § 841(a) is not required personally to be in actual or constructive possession or to intend personally to distribute the narcotics himself. *Longoria* does not require otherwise. For example: A person who loans his pick-up truck to a friend who states that he wants to transport a large shipment of marijuana to Norfolk, Virginia and to deliver it to his distributor there aids and abets the crime of possessing marijuana with intent to distribute even though he never acquires constructive or actual possession of the controlled substance and never intended personally to distribute the drug. See 18 U.S.C. § 2 and cases cited, *infra.*

The dissent also relies on two other cases: *Mack v. United States*, 326 F.2d 481 (8th Cir.), *cert. denied*, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964), and *Lucero v. United States*, 311 F.2d 457 (10th Cir. 1962), *cert. denied*, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963). Such reliance is outdated. Those cases—decided 20 and 18 years ago—applied a conclusive statutory presumption that was *repealed* 12 years ago (84 Stat. 1291) by the present Controlled Substances Act, 21 U.S.C. § 841, Act of Oct. 27, 1970, 84 Stat. 1260. The *prior* statute 21 U.S.C. § 174 provided:

Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such *possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.*

(65 Stat. 768) (emphasis added). Thus, *Mack* and *Lucero* both arose under a specific statutory *presumption* that required the defendant to explain the possession of a narcotic drug to "the satisfaction of the jury," (65 Stat. 768). Unexplained possession was sufficient to sustain conviction and juries were so instructed. In view of this statutory presumption *Mack, Lucero*, and other cases ruled that the aiding and abetting statute could not be applied to such an extent as to compel the aider to explain the principal offender's possession to the satisfaction of the jury, or suffer the consequences of not explaining it. The prior act, 21 U.S.C. § 174, was completely replaced by the Controlled Substances Act, 21 U.S.C. 801, *et seq.*, which does not require any accused person to explain anything to the satisfaction of the jury and is not dependent upon any statutory presumption to be drawn from mere posses-

sion. *The aiding and abetting statute therefore may be applied in the same normal manner as it is applied to all other federal offenses.*

Accordingly, the stricture of *Mack* and *Lucero* that "actual or constructive possession of the aider and abettor must be proven" in narcotics offenses is no longer applicable. This is recognized in the Eighth Circuit decision, issued *after* the repeal of § 174 by the Controlled Substances Act, which did *not* apply its prior decision in *Mack. United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir. 1974). In this case Chief Judge Gibson stated for a unanimous court:

To establish aiding and abetting [under 21 U.S.C. § 841(a)(1)] it is only necessary that the Government show "that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed,' " *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949), *quoting United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938). "This means there must exist some affirmative participation which at least encourages the perpetrator." *United States v. Thomas*, 469 F.2d 145, 147 (8th Cir. 1972).

507 F.2d at 934.

Thus, under 18 U.S.C. § 2, normal aiding and abetting principles, *without requiring actual or constructive possession*, are now applied to drug offenses under 21 U.S.C. § 841(a)(1). *United States v. Snow*, 537 F.2d 1166, 1168–69 (4th Cir. 1976) (arranged meeting between government agent and seller, was present when sale made but did "not handle drugs, physically deliver the drugs, or receive any money from the government agent; and distribution charge was dismissed against seller); *United States v. Licursi*, 525 F.2d 1164, 1167 (2d Cir. 1975) (appellant introduced purchaser to seller, coaxed and reassured government agent to go on with purchase, but was not present when transaction was completed); *United States v. Martinez*, 479 F.2d 824, 829 (1st Cir. 1973) (appellant convicted on evidence of "counselling" principal offender).

*United States v. Jackson*, 526 F.2d 1236 (5th Cir. 1976), is also cited by the dissent. That case held that mere introduction of government agent to seller, without more, was sufficient to support conviction for aiding and abetting *distribution* offense, but not *possession* with intent to distribute. The dissent would read more into that decision, with respect to cases charging possession with intent to distribute, than is actually there. Whether one aids or abets the offense depends on the evidence in the particular case. *Jackson* only holds that one convicted of aiding or abetting the crime of possession with intent to distribute must give the required statutory support to the *possession* element of the offense as well as the intent to distribute. This requirement can be satisfied by evidence of *any* of the acts specified in 18

In the instant case, then, the jury were clearly justified in deciding that Raper's associational activities with Childs aided and abetted Childs' contemporaneous possession of heroin with intent to distribute without Raper ever having had possession of the drugs himself. Based on the evidence and the jury's verdict thereon, we find that Raper did so aid and abet the substantive offense, and that the district court properly adjudged under 18 U.S.C. § 2 that he was guilty as a principal.

(d) The court's instruction on the defendant as a witness and on aiding and abetting.

Appellants complain that it was improper for the court to instruct on the "defendant as a witness" and on "aiding and abetting." When jury instructions were being discussed with the court, the judge indicated he would *not* give the standard redbook instructions on "aiding and abetting" and on the "defendant as a witness." (Tr. 319, 321). District of Columbia Bar Association, Criminal Jury Instructions for the District of Columbia Nos. 4.02, 2.27 (3d ed. 1978). However, after the jury arguments were completed, the court gave both such instructions it had previously indicated it would not give. Appellants claim that giving the two instructions under such circumstances violated Rule 30, Federal Rules of Criminal Procedure, which provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. *The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury* *after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. . . .* [emphasis added.]

We refuse to accept this claim of error for three reasons. First, no objection was voiced to the instructions at the time they were given. Second, subsequent factors intervened to justify the court giving the instructions. *Hamling v. United States*, 418 U.S. 87, 131–135, 94 S.Ct. 2887, 2914–2916, 41 L.Ed.2d 590 (1974); [2] *United States v. Lyles*, 593 F.2d 182, 186 (2d Cir.), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). Third, the record demonstrates that appellants were not prejudiced by the giving of the instructions.

(1) The defendant as a witness instruction.

The court explained after giving this instruction (Tr. 339) that he did so because counsel for the defendants subsequently argued to the jury the supposed interest the police witnesses had in the outcome of the case. In view of that circumstance the court considered it was not fair to permit the case to go to the jury without pointing out that defendants, who had both testified, had a similar or greater interest. (Tr. 356–357). An examination of the jury argument of defense counsel indicates that a highly questionable attack was made upon the activity of the police officers. In view of this subsequent development we find it was proper for the court to give the instruction. In addition, neither defendant objected to the instruction and there was no prejudice because counsel for Raper in his jury argument anticipated that the instruction would be given (Supp. Tr. 25).

U.S.C. § 2 and does not require proof of actual or constructive possession. *See Snow, Licursi* and *Martinez, supra.*

**2.** In *Hamling v. United States, supra*, the Court left open the question as to who bears the burden of proving prejudice in violations of Rule 30. The general rule that the burden rests on the party making the claim is in accord with common law principles and is likely to yield a more meaningful record. *See United States v. Decoster*, 624 F.2d 196, 227-228 (1979) (*en banc*), *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979).

**(2) The aiding and abetting instruction.**

After the court gave this instruction the judge explained that it did so because it noted later that aiding and abetting under 18 U.S.C. § 2 and the D.C. Code was specifically charged in the indictment. (Tr. 357). The statutory reference in Count 1 charging unlawful possession with intent to distribute cited 18 U.S.C. Code § 2 and 21 U.S.C. § 841(a) as the two statutes allegedly violated. The former was denominated as "(aiding and abetting)." The D.C. count also referred to the substantive statute, D.C.Code § 33–402, and the D.C. aiding and abetting statute, D.C. Code § 22–105 (1973). Under such circumstance the aiding and abetting instruction should be given.

It is also significant that during the trial the court asked government counsel in open court if he was proceeding on an aiding and abetting theory. (Tr. 348–349). Then, after the court gave the aiding and abetting instructions, the court brought counsel to the bench and invited additional suggestions or objections. None were forthcoming. (Tr. 350–351). An objection was required to preserve the point. *See* Rule 30, Fed.R.Crim.P., *supra*, p. 16. Had counsel considered he was prejudiced he could have objected and the court might have allowed him to argue the point. Since no objection was raised at trial, the point, since it does not involve plain error, cannot now be raised. A failure to object under such circumstances can be considered an on-the-spot determination by trial counsel that the charge was not detrimental to his case. We agree with that evaluation. Since the Government had a clear right to the instruction and there was no objection, there was no error.

## CONCLUSION

For the foregoing reasons, the respective convictions of petitioners Childs and Raper are affirmed.

*Judgment accordingly.*

HARRY T. EDWARDS, Circuit Judge, concurring in part and dissenting in part:

On the record at hand, I agree that there is no basis upon which to upset the conviction of appellant Childs. I therefore concur in the result reached by the majority affirming Childs' conviction of unlawful possession of heroin with intent to distribute.

As to appellant Raper, I agree with the conclusion in the majority opinion that "the jury could properly have found that the testimony . . . justified a finding that Raper was in *constructive possession* of Childs' heroin with intent to distribute." At 848 (emphasis added). As we noted in *United States v. Pardo*, 636 F.2d 535 (D.C.Cir.1980), in order to find constructive possession, "[t]here must be some action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them. There must be something to prove that the individual was not merely an incidental bystander." *Id.* at 549. In this case, there was more than enough evidence for the jury to conclude that Raper was "an integral participant in the [drug] transaction, [and] that 'in some discernible fashion' he had 'substantial voice vis-a-vis the drug.'" *Id.* at 548 (quoting *United States v. Staten*, 581 F.2d 878, 884 (D.C.Cir.1978)). I think that it would be unrealistic—indeed, naive—to suggest that a jury could not find constructive possession in a situation like the one posed here. The jury obviously concluded that Raper was a joint participant in an illicit drug sale; given this, the jury properly could find joint dominion or control over the drugs.[1]

I am troubled, however, by the additional holding of the majority, that "the evidence is sufficient to support a jury finding that Raper *aided and abetted* Childs' unlawful possession with intent to distribute." At 848 (emphasis added). In particular, I reject the suggestion in the majority opinion that "[p]ossession . . . is not an absolute element that must be shown to justify a

---

1. The jury reasonably could have found that "control" over the disposition of the drugs arose when Raper accepted money from the third party, thereby incurring an obligation on the part of Childs to deliver the drugs to the buyer.

conviction for aiding and abetting possession with intent to distribute." *Id.* at 850. This suggestion is unnecessary to the decision in this case, and I believe it is wrong as a matter of law.

As noted in *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978),

> in a prosecution for aiding and abetting possession of cocaine with intent to distribute, there must be evidence connecting the defendant with both aspects of the crime, possession and intent to distribute.

Even more to the point is the ruling in *Mack v. United States*, 326 F.2d 481 (8th Cir.), *cert. denied*, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964):

> The government ... may not short-circuit its proof of possession as to appellant on the theory that he aided and abetted the principal offender in whom possession of the drug existed.... [A]ctual or constructive possession of the aider and abetter must be proven:
>
> > "Otherwise, an aider and abetter would be required to explain away not his possession but the possession of another."

326 F.2d at 484 (quoting *Lucero v. United States*, 311 F.2d 457, 459 (10th Cir. 1962), *cert. denied*, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963)).[2]

The majority seeks solace in the opinion of Judge Gibson in *United States v. Wiebold*, 507 F.2d 932 (8th Cir. 1974). Despite the claim by the majority to the contrary, the decision in *Wiebold* is not at odds with aforecited holdings in *Longoria* or *Mack*. In *Wiebold*, the defendant argued that the Government had to establish a "prior agreement" between the actual distributor of the drug and himself in order to establish "aiding and abetting" in violation of 18 U.S.C. § 2. 507 F.2d at 933–34. Although the court properly rejected this contention, it nevertheless confirmed that there must be

clear evidence connecting the defendant with both aspects of the crime, possession and intent to distribute:

> We think the evidence is sufficient to establish defendant's association and participation in the venture. The evidence showed that Wiebold acted as a supplier of LSD to Nickels. Nickels, occasionally accompanied by his companion-in-crime, Hoffarth, would travel to Denver, Colorado, where he would receive a quantity of LSD tablets from Wiebold. Nickels and Hoffarth would then sell the tablets in the Omaha, Nebraska, area, paying Wiebold for the tablets out of the proceeds of these sales ....
>
> Whether the jury considered that Wiebold was associated with Nickels in a joint venture or that he merely delivered the LSD on consignment, the evidence was sufficient to establish Wiebold's knowing association and participation in Nickels' possession of LSD with intent to distribute.

507 F.2d at 934.

Just as in this case, the facts in *Wiebold* indicate that the defendant was a joint participant in an illicit drug sale, plainly connected with both the unlawful "possession" and the unlawful "distribution." Absent such evidence, it is impossible to comprehend the meaning of a charge of "aiding and abetting" unlawful *possession* (as distinguished from aiding and abetting unlawful *distribution*).

The point here made was highlighted in *United States v. Jackson*, 526 F.2d 1236 (5th Cir. 1976). After a jury trial, defendant Jackson was convicted on a one count indictment of aiding and abetting possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (the same two statutory provisions at issue here). On appeal, the Fifth Circuit reversed the conviction:

---

**2.** Although the majority opinion appears to suggest otherwise, our decision in *United States v. Staten*, 581 F.2d 878 (D.C.Cir.1978), plainly does not support a conclusion that neither actual nor constructive possession is necessary to support a conviction of aiding and abetting possession with intent to distribute. Indeed, in *Staten* the defendant was found guilty of both actual and constructive possession, so the court could not have decided the point here in issue.

Evidence presented at trial established that Jackson introduced co-defendant Bischoff to co-defendant Thurman. In turn, Thurman and Bischoff arranged to sell the cocaine in question to Drug Enforcement Administration agents, who arrested them both after weighing and testing the drug. Jackson did not exercise dominion or control over the cocaine, but he was associated with the criminal venture, participated in it as in something he wished to bring about, and sought by his action to make it succeed .... He was improperly indicted under the possession clause of 21 U.S.C. § 841(a)(1), because although the evidence was sufficient to sustain an aiding and abetting charge of distribution under § 841(a)(1), it fails to establish Jackson's aiding and abetting possession of the cocaine with intent to distribute.

Jackson's conviction cannot be sustained under a theory of constructive possession, because there is no evidence that he exercised any measure of dominion or control over the contraband ....

. . . .

18 U.S.C. § 2 codified the common law relating to accessories, making one who aids and abets a substantive offense liable as a principal. To aid and abet means to assist the perpetrator of the crime while sharing in the requisite criminal intent .... Thus Jackson could have been convicted of aiding and abetting the distribution of the cocaine because of his overall participation in the criminal venture .... There was not, however, any evidence that he helped Thurman obtain the cocaine, or that he exercised any control over it. There was no participation by Jackson in the possession aspect of the transaction on which his conviction of aiding and abetting possession with intent to distribute can be sustained.

526 F.2d at 1237–38 (citations omitted). The decision in *Jackson* plainly rejects the broad sweep attributed by the majority to

18 U.S.C. § 2 with respect to charges of "aiding and abetting possession with intent to distribute."

To my mind, the holdings in *Jackson, Longoria* and *Mack* are eminently sound and should be followed if a similar case is presented to this court. In this case, however, because I agree that a jury could find Raper guilty of constructive possession with intent to distribute, I concur in the court's affirmance of his conviction.[3]

---

**3.** Appellant Raper has argued that the trial judge's instructions to the jury may have caused the jury to mistakenly believe that the Government need not prove actual or constructive possession by Raper. Although the instructions may not have been a model of clarity, I can find no substantial basis to support a claim of prejudicial error.