859 F.2d 153
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Yunes HAMDAN, Defendant-Appellant.
 No. 87-3693.
 United States Court of Appeals, Sixth Circuit.
 Sept. 23, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges and CARL B. RUBIN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant, Michael Y. Hamdan ("Hamdan") appeals his jury conviction pursuant to 18 U.S.C. Sec. 844(i) (1982), for malicious destruction of property by means of fire. On appeal, Hamdan argues that he was unfairly prejudiced at trial by questions concerning his alleged history of filing fire insurance claims. In addition, he alleges that there was insufficient evidence to support his conviction. Since we find these claims to be without merit, we affirm the district court's judgment.
 
 I.
 
 2
 In August 1985, the defendant purchased "Seymour Market," a grocery store located on Seymour Avenue in Cleveland, Ohio. Hamdan purchased the market in the name of his wife, Wijdan Hamdan. In November 1985, Hamdan contacted the Chema Insurance Agency of Akron and made arrangements to purchase an insurance policy for Seymour Market. He identified himself as Wijdan Hamdan and stated that he had received a renewal offer to insure Seymour Market from his then present insurance carrier, Nationwide Insurance Company. He stated that because the renewal offer substantially increased his premiums, he was interested in obtaining a better price for comparable coverage. Hamdan requested a policy which provided for $35,000.00 business property insurance, liability insurance and business interruption insurance. Chema offered Hamdan a business-owner package issued by the Unigard Insurance Group which mirrored the policy he indicated he then possessed for Seymour Market. On November 18, 1985, Hamdan accepted the offer by Unigard and executed the contract in the name of Wijdan Hamdan.
 
 
 3
 In February 1986, Hamdan stated to Felix Ramos, a neighbor whose residence closely abutted the Seymour Market, that there was "no business" at the market and that "business was bad." Tr. 185. Almost a month prior to the fire, Hamden engaged Ramos in conversation wherein he remarked that he had received threats that someone was going to burn down the store, and that he had informed the police department about these threats.
 
 
 4
 On the evening of April 27, 1986, after the market's closing time, Felix Ramos observed Hamdan removing certain items from the grocery store. Ramos soon thereafter left for work. The remaining members of the Ramos family were at home and asleep when, approximately 3:15 a.m., they were awakened by the sound of a loud explosion. Mrs. Ramos observed that a fire was very close, and told her daughter, Xiomara, that they had to abandon the house. Mrs. Ramos and Xiomara then ran out the front door together. Xiomara testified that as she was leaving the house, she saw Hamdan standing in front of Seymour Market making "throwing motions" at the store and "moaning words" as if he was angry. Tr. 196. She further testified that because of the light from the fire she observed Hamdan's full face. Mrs. Ramos corroborated Xiomara's testimony.
 
 
 5
 Later in the morning, Hamdan called his insurance agent and reported the fire. The investigation of the fire scene by police officers led to Hamdan's subsequent indictment which charged that he violated 18 U.S.C. Sec. 844(i), by intentionally setting fire to the building. He was convicted by a jury on May 29, 1987, and timely filed notice of appeal.
 
 II.
 
 6
 Hamdan's first claim is that the prosecutor's cross-examination of him, concerning his alleged misrepresentation regarding prior fires and insurance claims related to those fires, was unfairly prejudiced. Relying on Fed.R.Evid. 404(b), Hamdan argues that the challenged evidence created the prejudicial inference that since he was involved with prior insurance claims, predicated on fire losses, then it was highly probable that he committed the instant offense.
 
 
 7
 Hamdan's arguments are without merit. First of all, the prosecutor's cross-examination was not conducted to reveal the fact that Hamdan had been involved with previous fires and had been compensated for his losses through his insurance policies. Rather, the cross-examination was directed to show that Hamdan had distorted and lied about these previous events both before the fire at Seymour Market, and thereafter at trial. Unfair prejudice could not have resulted from the cross-examination regarding prior fires or insurance claims since Hamdan himself testified to these matters on direct examination, Tr. 349-50, and again on redirect Tr. 370-76. It is well established that the subject matter of direct examination and issues concerning witness credibility "are always open to cross-examination." See United States v. Arnott, 704 F.2d 322 (6th Cir.), cert. denied, 464 U.S. 948 (1983) (citing United States v. Raper, 676 F.2d 841 (D.C.Cir.1982)).
 
 
 8
 Moreover, Hamdan's argument fails because he failed to object to the relevant cross-examination at trial. It is well established that a party must make a contemporaneous objection to the disputed action of the trial court in order to preserved error for appellate review. United States v. Terry, 729 F.2d 1063, 1069 (6th Cir.1984). Indeed, where a party fails to object to the admission of evidence at trial, the litigant must show on appeal that the introduction of evidence constituted "plain error" pursuant to Rule 52(b), Fed.R.Crim.P. United States v. Gironda, 758 F.2d 1201, 1219 (7th Cir.), cert. denied, 474 U.S. 1004 (1985); United States v. Chilcote, 724 F.2d 1498, 1503 (11th Cir.), cert. denied, 467 U.S. 1218 (1984). A review of the record demonstrates that Hamdan's attorney failed to register objections to the prosecutor's line of questioning on cross-examination. Tr. 352-361. In addition, Hamdan has failed to show that the introduction of the prosecutor's line of cross-examination questions constituted plain error. Thus, the challenged evidence is clearly admissible.
 
 III.
 
 9
 Hamdan's second claim is that the evidence was insufficient to demonstrate, beyond a reasonable doubt, that he was responsible for setting fire to Seymour Market. In support of this claim, he states that the testimony of two witnesses who located him standing in front of the market could not be believed because they failed to describe him holding the gasoline can, or any other instrument used in setting the fire. Moreover, he claims that his presence at the fire was "categorically rebutted" by his own denials and by those of his wife.
 
 
 10
 Hamdan's argument fails because the government offered substantial evidence which clearly supports the finding of guilt. First, the government offered the eyewitness testimony of Mrs. Anna Ramos and Xiomara Ramos who testified that they saw Hamdan standing by the front door of Seymour Market as they exited the front door of their residence. Indeed, Xiomara observed his full face looking directly at them. Since the witness' had a prior substantial relationship with Hamdan there is no reason to suspect their testimony is less than candid and truthful. Second, arson investigators confirmed that the arsonist poured gasoline on the front door which burned while the door was standing open. Also, the gasoline can which was used to start the fire was found inside the front door. Third, Hamdan's contradictory testimony suggests that he engaged in a criminal plan to defraud the insurance company through a malicious destruction of Seymour Market. Although, Wijdan Hamdan and Harvey Godwin offered testimony supporting Hamdan's position, they were sleeping at the time of the fire and therefore their testimony could hardly rebut the two eyewitness' testimony. In light of these considerations and viewing the evidence in a manner most favorable to the government, see e.g. United States v. Ayotte, 741 F.2d 865 (6th Cir.), cert. denied, 469 U.S. 1076 (1984), we conclude that substantial evidence supports the jury's verdict.
 
 IV.
 
 11
 For the reasons stated above, we hereby AFFIRM the judgment of the district court.
 
 
 
 *
 Honorable Carl B. Rubin, United States District Court for the Southern District of Ohio, sitting by designation